

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------x

|  |  |
|---|---|
| In re | : Chapter 11 |
| | : |
| DSI HOLDINGS, INC., et al.,[1] | : Case No. 11-11941 (KJC) |
| | : |
| Debtors. | : (Jointly Administered) |
| | : |
| | : Re: Docket Nos. 14, 54 and 67 |

-----------------------------------------------------------x

## FINAL ORDER (1) AUTHORIZING POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364(c)(1), 364(c)(3) AND 364(d)(1); (2) AUTHORIZING THE USE OF CASH COLLATERAL; (3) GRANTING SECURITY INTERESTS AND SUPERPRIORITY CLAIMS; (4) PROVIDING ADEQUATE PROTECTION; (5) MODIFYING THE AUTOMATIC STAY; AND (6) GRANTING RELATED RELIEF

Upon the motion (the "***Motion***"), dated June 26, 2011 of DSI Holdings, Inc. ("***DSI***"), Deb Shops, Inc. (the "***Borrower***"), and each direct and indirect subsidiary of DSI other than the Borrower (including DSI, each, a "***Guarantor***"), each as a debtor and debtor-in-possession in the above-captioned chapter 11 cases (collectively, the "***Cases***"), pursuant to Sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3) and 364(d)(1) of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "***Bankruptcy Code***") and Rules 2002, 4001(c), and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), seeking, among other things:

(1)     authorization for the Borrower to obtain post-petition loans, advances and other financial accommodations on a final basis from Ableco, L.L.C., in its capacities as administrative agent and collateral agent (in such capacities, collectively, the "***DIP Agent***") for itself and the DIP Lenders (as defined below) in accordance with the DIP Credit

---

[1] The last four digits of DSI Holdings, Inc.'s federal tax identification number are 9441. The mailing address for DSI Holdings, Inc. is 9401 Blue Grass Road, Philadelphia, PA 19114. Due to the large number of Debtors in these cases, which are being jointly administered for procedural purposes, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses is not provided herein. A complete list of such information may be obtained on the website of the Debtors' noticing and claims agent at http://www.kccllc.net/debshops.

Agreement (as defined below) and this Order, secured by security interests in and liens upon all of the Collateral (as defined below) pursuant to Sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code;

(2) authorization for the Borrower and the Guarantors (individually, a "*Debtor*" and collectively, the "*Debtors*") to enter into, be bound by, and perform under the revolving debtor-in-possession credit facility (the "*DIP Facility*"), entitled "Financing Agreement" dated as of June 24, 2011 by and among the Borrower, the Guarantors, the DIP Agent, and the lenders from time to time party thereto (the "*DIP Lenders*") which agreement is attached to the Motion as <u>Exhibit 1</u> (as it may be modified, supplemented, amended or restated from time to time, the "*DIP Credit Agreement*", and together with the other Loan Documents, as defined in the DIP Credit Agreement, the "*DIP Loan Documents*");

(3) authorization for the Debtors to use the Collateral (including Cash Collateral (as defined below)), subject to the existing liens and security interests in favor of the First Lien Administrative Agent on behalf of the First Lien Lenders, the Second Lien Administrative Agent on behalf of the Second Lien Lenders, the Sponsor Lender and the Credit Support Provider (as each of those terms is defined below) and granting adequate protection to these parties as set forth herein;

(4) authorization for the Debtors to grant to the DIP Agent, for the benefit of the DIP Lenders, superpriority administrative claim status pursuant to Section 364(c)(1) of the Bankruptcy Code in respect of all obligations under the DIP Credit Agreement and DIP Loan Documents (the "*DIP Obligations*");

(5) modification of the automatic stay to the extent hereinafter set forth; and

(6) the setting of a final hearing on the Motion; and

An interim hearing on the Motion having been held on June 28, 2011 (the "*Interim Hearing*") and an order having been entered on that date approving the Motion on an interim

basis [Docket No. 54] (the "***Interim Order***" and together with this Order, the "***Financing Orders***"); and

The final hearing on the Motion having been held by this Court on July 21, 2011 (the "***Final Hearing***"); and

It appearing that due and appropriate notice of the Motion, the relief requested therein, and the Interim Hearing and the Final Hearing (the "***Notice***") was served by the Debtors in accordance with Bankruptcy Rule 4001(c) on (i) the Office of the United States Trustee for the District of Delaware (the "***U.S. Trustee***"); (ii) counsel to the DIP Agent; (iii) counsel to the First Lien Administrative Agent; (vi) the First Lien Lenders; (v) counsel to the Second Lien Administrative Agent, if any; (vi) the Second Lien Lenders; (vii) counsel to the Sponsor Lender; (viii) each of the Debtors' creditors holding the thirty largest unsecured claims (on a consolidated basis); and (ix) the Internal Revenue Service; and

This Court having reviewed the Motion and any responses and objections thereto, the *Declaration of Barry J. Susson in Support of the First-Day Motions and Applications*, the *Declaration of Bernard Douton in Support of Debtors' Motion for Interim and Final (I) Authority to Obtain Postpetition Financing; (II) Authority to Use Cash Collateral; (III) Authority to Grant Security Interests and Superpriority Claims; (IV) Authority to Provide Adequate Protection; and (V) Modification of the Automatic Stay*, the other filings and pleadings made by the Debtors, and the evidence and testimony presented at the Interim Hearing and the Final Hearing, and after due deliberation and consideration and good and sufficient cause appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.     Commencement.  On June 26, 2011 (the "***Commencement Date***"), each Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession

pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. On July 11, 2011, the U.S. Trustee appointed an official committee of unsecured creditors (the "*Committee*").

      B.    <u>Jurisdiction and Venue</u>. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

      C.    <u>Notice</u>. Under the circumstances, the Notice given by the Debtors of the Motion, the Interim Hearing, the Final Hearing and the relief granted under the Interim Order and this Order constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 4001(c).

      D.    <u>Debtors' Stipulations Regarding the First Lien Lenders, the Pre-Petition Collateral and the First Lien Obligations</u>. Without prejudice to the rights of any other party as provided in Section 9.1 of this Order, the Debtors admit, stipulate, acknowledge and agree that:

      (i)    *First Lien Credit Agreement*: As of the Commencement Date, the Borrower, DSI, the Guarantors, the financial institutions parties thereto from time to time as lenders (the "*First Lien Lenders*"), Bank of America, N.A. and Commerce Bank, as documentation agents, and Ableco Finance LLC as successor first lien administrative agent (in such capacity and together with any successors thereto, the "*First Lien Administrative Agent*") are parties to that certain Amended and Restated First Lien Credit Agreement dated as of October 23, 2007 (as amended, amended and restated, supplemented or otherwise modified, refinanced or replaced prior to the Commencement Date, including, without limitation by that certain First Amendment and Waiver dated as of September 3, 2009, the "*First Lien Credit Agreement*" and together with the other Loan Documents (as defined in the First Lien Credit Agreement), in each case as amended, amended and restated, supplemented or otherwise modified, refinanced or replaced prior to the Commencement Date, collectively, the "*First Lien Loan Documents*").

      (ii)    *Credit Support Agreement*: As of the Commencement Date, the Borrower, DSI, Lee DSI Holdings, LLC (in such capacity, the "*Credit Support Provider*") and

the First Lien Administrative Agent are parties to that certain Credit Support Agreement dated as of September 3, 2009 (as amended, amended and restated, supplemented or otherwise modified, refinanced or replaced prior to the Commencement Date, the "*Credit Support Agreement*"). Based on the occurrence of a Draw Date (as defined in the Credit Support Agreement) under the Credit Support Agreement, on or about June 15, 2011, the First Lien Lenders assigned $15 million of the First Lien Obligations to the Credit Support Provider (the "*Assigned Interests*"). The Assigned Interests as well as the accrued and unpaid interest, costs, expenses, and fees owed to the Credit Support Provider in connection with the Assigned Interests (the "*Assigned Interest Expenses*") are subordinated in right of payment to the other First Lien Obligations as set forth in the Credit Support Agreement.

(iii) *First Lien Obligations and the Senior Liens*: As of the Commencement Date, the outstanding amounts arising under the First Lien Loan Documents (the "*First Lien Obligations*") totaled approximately $129.9 million, exclusive of all accrued and unpaid interest, costs, expenses, and fees owed to the First Lien Administrative Agent and First Lien Lenders. All of the First Lien Obligations are secured by first priority liens granted to the First Lien Administrative Agent for the benefit of the First Lien Lenders (the "*Senior Liens*") on substantially all of the personal and real property of the Debtors, as described and defined in the First Lien Loan Documents (the "*Pre-Petition Collateral*"), which includes cash collateral within the meaning of Bankruptcy Code 363(a) ("*Cash Collateral*"). The Senior Liens (1) are valid, binding, enforceable and perfected liens in the Pre-Petition Collateral, (2) were granted to the First Lien Administrative Agent for the benefit of the First Lien Lenders for fair consideration and reasonably equivalent value, (3) are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (4) are subject and subordinate only to valid, perfected and unavoidable liens permitted under the applicable First Lien Loan Documents, but only to the extent that (x) such liens are permitted by the applicable First Lien Loan Documents to be senior to the applicable Senior Liens and (y) such liens are actually senior to the applicable Senior Liens under applicable law, and (b)(1) all

of the First Lien Obligations constitute legal, valid and binding obligations of the applicable Debtors, enforceable in accordance with the terms of the applicable First Lien Loan Documents, (2) no setoffs, recoupments, offsets, defenses or counterclaims to any of the First Lien Obligations exist, and (3) no portion of the First Lien Obligations or any payments made to or for the benefit of the First Lien Administrative Agent or any of the First Lien Lenders are subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(iv) *Proof of Claim.* The acknowledgment by Debtors of the First Lien Obligations and the rights, priorities and protections granted to the First Lien Administrative Agent for the benefit of the First Lien Lenders pursuant to the First Lien Loan Documents were, upon entry of the Interim Order, deemed to be a timely filed proof of claim on behalf of the First Lien Lenders (including the Credit Support Provider as holder of the Assigned Interests) in these Cases and neither the First Lien Administrative Agent nor the First Lien Lenders are or shall be required to file any additional proofs of claim with respect to the First Lien Obligations.

E. Debtors' Stipulations Regarding the Debtors' Other Pre-Petition Secured Debt.

(i) *Sponsor Loan Agreement*: As of the Commencement Date, the Borrower and Lee DSI Holdings, LLC (in such capacity, the "*Sponsor Lender*" and solely in its capacity as the Credit Support Provider and the Sponsor Lender, the "*Lee Parties*") are parties to that certain Sponsor Loan Agreement dated as of September 3, 2009 (as amended, amended and restated, supplemented or otherwise modified, refinanced or replaced from time to time, the "*Sponsor Loan Agreement*" and together with the other Loan Documents (as such term is defined in the Sponsor Loan Agreement), the "*Sponsor Loan Documents*"). As of the Commencement Date, the outstanding amounts arising under the Sponsor Loan Documents (the "*Sponsor Loan Obligations*") totaled approximately $4.8 million, exclusive of all accrued and unpaid interest, costs, expenses, and fees owed to the Sponsor Lender. The Sponsor Loan

Obligations are (1) secured by the Senior Liens, and (2) are subordinated in right of payment to the First Lien Obligations as set forth in the Sponsor Loan Documents.

(ii)     *Second Lien Credit Agreement*:  As of the Commencement Date, the Borrower, the Guarantors, the financial institutions parties thereto from time to time as lenders (the "*Second Lien Lenders*"), Barclays Capital, as lead arranger, Crystal Capital Fund Management, L.P., as syndication agent, and Barclays Bank PLC as documentation agent and administrative agent (including any successor agent(s) to Barclays Bank PLC, and in the event there is no successor agent(s) then the Second Lien Lenders functioning in such capacity as agent(s), the "*Second Lien Administrative Agent*") are parties to that certain Amended and Restated Second Lien Credit Agreement dated as of October 23, 2007 (as amended, amended and restated, supplemented or otherwise modified, refinanced or replaced prior to the Commencement Date, including, without limitation by that certain First Amendment and Waiver to Second Lien Credit Agreement dated as of September 3, 2009, the "*Second Lien Credit Agreement*" and together with the other Loan Documents (as defined in the Second Lien Credit Agreement), in each case as amended, amended and restated, supplemented or otherwise modified, refinanced or replaced prior to the Commencement Date, collectively, the "*Second Lien Loan Documents*").  As of the Commencement Date, the outstanding amounts arising under the Second Lien Loan Documents (the "*Second Lien Obligations*") totaled approximately $58.6 million including payment-in-kind interest.  The Second Lien Obligations are secured by junior and subordinated liens granted to, or for the benefit of, the Second Lien Administrative Agent on behalf of the Second Lien Lenders, on the Pre-Petition Collateral (the "*Junior Liens*"), as more fully described in the Second Lien Loan Documents, which Junior Liens are subject and subordinate to the Senior Liens and to liens that are permitted to be senior to or *pari passu* with the Senior Liens by the applicable First Lien Loan Documents.

F.     Findings Regarding the Post-Petition Financing.

(i)     *Post-Petition Financing.*  The Debtors have requested from the DIP Agent and the DIP Lenders, and the DIP Agent and the DIP Lenders are willing to extend,

certain loans, advances and other financial accommodations on the terms and conditions set forth in this Order and the DIP Loan Documents.

(ii)     *Need for Post-Petition Financing.*    The Debtors do not have sufficient available sources of working capital, including cash collateral, to operate their businesses in the ordinary course of their business without the financing requested under the Motion. The Debtors' ability to maintain business relationships with their vendors, suppliers and customers, to pay their employees, and to otherwise fund their operations is essential to the Debtors' continued viability as the Debtors seek to maximize the value of the assets of their Estates (as defined below). The ability of the Debtors to obtain sufficient working capital and liquidity through the proposed post-petition financing arrangements with the DIP Agent and DIP Lenders as set forth in this Order and the DIP Loan Documents is vital to the preservation and maintenance of the going concern values of the Debtors. Accordingly, the Debtors must obtain the post-petition financing in order to, among other things, permit the orderly continuation of the operation of their businesses, minimize the disruption of their business operations, and preserve and maximize the value of the assets of their bankruptcy estates (as defined under Section 541 of the Bankruptcy Code, the "*Estates*").

(iii)    *No Credit Available on More Favorable Terms.*    The Debtors are unable to procure financing in the form of unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code, as an administrative expense under Section 364(a) or (b) of the Bankruptcy Code, or solely based on the grant of an administrative expense priority pursuant to Section 364(c)(1) of the Bankruptcy Code. The Debtors are also unable to obtain secured credit allowable solely under section 364(c)(2) or 364(c)(3) of the Bankruptcy Code. The Debtors have been unable to procure the necessary financing on terms more favorable than the financing offered by the DIP Agent and the DIP Lenders pursuant to the DIP Credit Agreement.

(iv)    *Budget.*    The Debtors have prepared and delivered to the DIP Agent and the DIP Lenders a Budget (as defined in the DIP Credit Agreement). Such Budget has been thoroughly reviewed by the Debtors and their management and sets forth, among other

things, projections for the periods covered thereby. The DIP Agent and the DIP Lenders are relying upon the Debtors' compliance with the Budget in accordance with the terms of the DIP Credit Agreement, the other DIP Loan Documents and this Order in determining to enter into the post-petition financing arrangements provided for herein.

(v) *Business Judgment and Good Faith Pursuant to Section 364(e)*. The terms of the DIP Loan Documents and this Order are fair, just and reasonable under the circumstances, are ordinary and appropriate for secured financing to debtors-in-possession, reflect the Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The terms and conditions of the DIP Loan Documents and this Order have been negotiated in good faith and at arms' length by and among the Debtors, on one hand, and the DIP Agent, the DIP Lenders, and the First Lien Administrative Agent, on the other hand, with all parties being represented by counsel. Any credit extended under the terms of this Order shall be deemed to have been extended in good faith by the DIP Agent and the DIP Lenders as that term is used in Section 364(e) of the Bankruptcy Code.

(vi) *Good Cause*. The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtors, their creditors and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (a) minimize disruption to the Debtors' businesses and on-going operations, (b) preserve and maximize the value of the Debtors' Estates for the benefit of all the Debtors' creditors, and (c) avoid immediate and irreparable harm to the Debtors, their creditors, their businesses, their employees, and their assets.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED**, that:

Section 1.    <u>Authorization and Conditions to Financing.</u>

      1.1    <u>Motion Granted</u>.    The Motion is hereby granted in accordance with Bankruptcy Rule 4001(c)(2) on a final basis.  This Order shall hereinafter be referred to as the "*Final Order*."

      1.2    <u>Authorization to Borrow and Use Loan Proceeds</u>.  The Debtors are hereby authorized to immediately borrow, pursuant to the DIP Credit Agreement, an aggregate amount not to exceed $21.7 million (including for the issuance of letters of credit), provided that (i) disbursements of such amount are in accordance with the Budget; and (ii) any borrowings in excess of $15 million shall be in the sole and absolute discretion of the DIP Agent as provided in the DIP Loan Documents.  Upon the entry of this Final Order, the Debtors shall be authorized to use the Collateral, including Cash Collateral, and to draw on the DIP Facility to make any disbursement as specifically provided in the Budget, but solely in accordance with the terms and conditions set forth in this Final Order and the DIP Loan Documents.

      1.3    <u>DIP Loan Documents</u>

      1.3.1    <u>Approval</u>.  The Debtors are authorized to enter into and be bound by the DIP Loan Documents (including, without limitation, the DIP Credit Agreement).  The terms, conditions and covenants of the DIP Loan Documents (including, without limitation, the DIP Credit Agreement) shall be sufficient and conclusive evidence of the borrowing arrangements by and among the Debtors, the DIP Agent and the DIP Lenders, and of each Debtor's assumption and adoption of all of the terms, conditions, and covenants of the DIP Credit Agreement and the other DIP Loan Documents for all purposes, including, without limitation, to the extent applicable, the payment of all DIP Obligations arising thereunder, including, without limitation, all principal, interest, commissions, letter of credit fees, servicing fees, unused line fees, DIP facility fee, early termination fees, and other fees and expenses, including, without limitation, all of the DIP Agent's and the DIP Lenders' consultant fees,

professional fees, attorney fees and legal expenses, as more fully set forth in the DIP Loan Documents.

        1.3.2 <u>Amendment.</u> Subject to the terms and conditions of the DIP Credit Agreement and the other DIP Loan Documents, the Debtors, the DIP Agent and the DIP Lenders may amend, modify, supplement or waive any provision of the DIP Loan Documents (an "***Amendment***") without further approval or order of the Court provided that (i) such Amendment is not material (for purposes hereof, a "material" Amendment shall mean any Amendment that increases the interest rate other than as currently provided in the DIP Loan Documents, increases the Total Revolving Credit Commitment (as defined in the DIP Credit Agreement), adds specific new events of default or enlarges the nature and extent of remedies available to the DIP Lenders following an Event of Default (as defined herein), or otherwise modifies any terms and conditions in any the DIP Loan Documents in a manner materially less favorable to Debtors) and is undertaken in good faith by the DIP Agent, the DIP Lenders and the Debtors; (ii) the Debtors provide prior written notice of the Amendment (the "***Amendment Notice***") to (x) the U.S. Trustee and (y) counsel to the Committee; (iii) the Debtors file the Amendment with the Court; and (iv) no objection to the Amendment is filed with the Court within two (2) business days from the later of the date the Amendment is served or the date the Amendment is filed with the Court in accordance with this Section. Any material Amendment to the DIP Loan Documents must be approved by the Court to be effective.

Section 2.    <u>Liens; Superpriority Administrative Claim Status.</u>

    2.1    <u>Priority and Liens</u>.

        2.1.1 <u>Lien Grant</u>. To secure the prompt payment and performance of any and all obligations of the Debtors to the DIP Agent and the DIP Lenders of whatever kind, nature or description, absolute or contingent, now existing or hereafter arising, the DIP Agent, for the benefit of itself and the other DIP Lenders, shall have and is hereby granted, effective as of the Commencement Date, valid and perfected first priority security interests and liens, superior to all other liens, claims or security interests that any creditor of the Debtors' Estates

may have (but subject to the Carve Out Expenses (as defined below) and the Permitted Priority Liens (as defined in the DIP Credit Agreement), as and to the extent expressly provided in Section 2.1.2 below), in and upon all of the Collateral (as defined in the DIP Credit Agreement) (collectively, the "*DIP Liens*"), provided, that with respect to any leased real property of the Debtors that is subject to a lease that prohibits a leasehold mortgage or lien thereon, the DIP Liens will be limited to and shall attach solely to any proceeds of the assignment of such lease.

        2.1.2   <u>Lien Priority</u>. The DIP Liens shall be first and senior in priority to all other interests and liens of every kind, nature and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or interests granted in favor of third parties in conjunction with Section 363, 364 or any other Section of the Bankruptcy Code or other applicable law; provided, however, that the DIP Liens shall be subject to the Permitted Priority Liens and to the Carve Out Expenses to the extent provided for in Section 2.3 of this Final Order.

        2.1.3   <u>Post-Petition Lien Perfection</u>. This Final Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the DIP Liens, effective as of the Commencement Date, without any further act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, recording or possession of the Collateral, or other act to validate or perfect such security interest or lien (each, a "*Perfection Act*"). Notwithstanding the foregoing, if the DIP Agent shall, in its sole discretion, elect for any reason to file, record or otherwise effectuate any Perfection Act, the DIP Agent is authorized to perform such act, and the Debtors are authorized to perform such act to the extent necessary or required by the DIP Loan Documents, which act or acts shall be deemed to have been accomplished as of the Commencement Date, notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law. The DIP Agent, on behalf of the DIP Lenders, may choose to file, record or present a certified copy of the Interim Order and/or this Final Order in the same manner as a Perfection Act, which shall be tantamount

to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file or record such certified copy of the Interim Order and/or this Final Order in accordance with applicable law. Should the DIP Agent so choose and attempt to file, record or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the post-petition liens and security interests granted herein by virtue of the entry of this Final Order.

2.2    Superpriority Administrative Expense.    For all DIP Obligations now existing or hereafter arising pursuant to the Interim Order or this Final Order, the DIP Loan Documents or otherwise, the DIP Agent, for the benefit of itself and the other DIP Lenders, is granted an allowed superpriority administrative claim pursuant to Section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of the Debtors, whether now in existence or hereafter incurred by the Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, *inter alia* Sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 364(c)(1), 546(c), 726 or 1114 of the Bankruptcy Code (the "***Superpriority Claim***"), provided, however, that the Superpriority Claim shall be subject only to payment of the Carve Out Expenses.

2.3    Carve Out Expenses.    Upon the written notice by the First Lien Administrative Agent to the Debtors identifying an Event of Default and triggering the Carve-Out Expense Reduction Period (as defined in the DIP Credit Agreement) (the "***Trigger Date***"), the DIP Agent's and the DIP Lenders' liens, claims and security interests in the Collateral and their Superpriority Claim shall, in each instance, be subject only to the right of payment of the following expenses (the "***Carve Out Expenses***"):

a.    statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6);

b.    fees payable to the Clerk of this Court; and

c.      subject to the terms and conditions of this Final Order: (i) the unpaid and outstanding reasonable fees and expenses actually incurred on or after the Commencement Date and prior to the Trigger Date (provided that such fees and expenses need not become approved and allowed during the period between the Commencement Date and the Trigger Date), and approved and allowed by a final order of the Court pursuant to Sections 326, 328, 330, or 331 of the Bankruptcy Code by attorneys, accountants and other professionals retained by the Debtors and any Committee under Section 327 or 1103(a) of the Bankruptcy Code (collectively, the "*Professionals*"), in an amount not to exceed, on a Professional-by-Professional basis, the amounts set forth for such Professional for the applicable period prior to the Trigger Date in the Budget, (ii) the "Completion Fee" (as defined in that certain engagement letter, dated January 1, 2011, between Rothschild Inc. and Deb Shop, Inc. (the "*Rothschild Letter*")) in an amount not to exceed $1.9 million (minus any "Fee Credits" as defined in the Rothschild Letter) that (a) becomes due and owing upon the consummation of a sale of all or substantially all of the Debtors' assets or equity interests pursuant to Section 363 of the Bankruptcy Code to the First Lien Lenders (or an acquisition vehicle formed by the First Lien Lenders) pursuant to a credit bid in any amount or to another bidder for a purchase price of not less than $75 million and (b) is permitted to be paid by order of the Court, and (iii) the reasonable fees and expenses (other than the Completion Fee) actually incurred, and approved and allowed by a final order of the Court pursuant to Sections 326, 328, 330, or 331 of the Bankruptcy Code, by the Professionals during the Carve-Out Expense Reduction Period in an aggregate sum not to exceed the lesser of: (x) $200,000 and (y) the amounts provided for the Professionals in the Budget during the Carve-Out Expense Reduction Period (the "*Professional Expense Cap*"). Any payments made during the Carve-Out Expense Reduction Period (other than from Professional fee retainers or advances) on account of fees and expenses incurred during the Carve-Out Expense Reduction Period shall reduce

the Professional Expense Cap on a dollar-for-dollar basis. Notwithstanding the foregoing, none of the Carve Out Expenses, amounts held by Professionals as fee retainers or advances, proceeds from the DIP Facility or Cash Collateral may be used to investigate (other than by a Committee, subject to a cap of $25,000, and further subject to the limitations contained in Section 9.1, below) or challenge in any respect the validity, perfection, priority, extent or enforceability of the First Lien Loan Documents or the liens or security interests securing the obligations under the First Lien Loan Documents, or to pursue any claims or causes of action of any kind against the DIP Agent, the DIP Lenders, the First Lien Administrative Agent or the First Lien Lenders in their respective capacities as agents or lenders under the DIP Loan Documents or First Lien Loan Documents, as the case may be. In addition, none of the Carve Out Expenses, amounts held by Professionals as fee retainers or advances, proceeds from the DIP Facility or Cash Collateral may be used: (i) to challenge or otherwise alter any of the DIP Loan Documents, the DIP Liens, the DIP Obligations, the Financing Orders or that certain "Agreement Regarding Credit Bid" dated as of June 24, 2011 by and among the Debtors, the First Lien Administrative Agent, the First Lien Lenders, the Lee Parties, and certain other parties thereto, except as otherwise may be consented to, in writing, by the DIP Agent and the First Lien Administrative Agent in their sole and absolute discretion or (ii) for any matter that would be prescribed by or constitute an event of default under Sections 9.2 or 10.6 of this Final Order, except as otherwise may be consented to, in writing, by the DIP Agent and the First Lien Administrative Agent in their sole and absolute discretion.

    2.4    Use of Cash Collateral; Adequate Protection.

        2.4.1    Authorization to Use Cash Collateral.  Subject to the terms and conditions of this Final Order, the DIP Credit Agreement and the other DIP Loan Documents, and in accordance with the Budget, the Debtors shall be and are hereby authorized to use, until the termination of the DIP Agent's and the DIP Lenders' commitment to lend under the DIP

Credit Agreement or the other DIP Loan Documents, Cash Collateral subject to the Senior Liens and the Junior Liens. Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their Estates outside the ordinary course of business, or any Debtor's use of Cash Collateral or other proceeds resulting therefrom, except as permitted in this Final Order, the DIP Credit Agreement, and the other DIP Loan Documents and in accordance with the Budget.

2.4.2   First Lien Adequate Protection.

a.   *Senior Replacement Liens.* As adequate protection for the diminution in value of their interests in the Pre-Petition Collateral (including Cash Collateral) on account of the Debtors' use of such Pre-Petition Collateral (including Cash Collateral), the imposition of the automatic stay, the incurrence of the DIP Obligations, and the subordination to the Carve Out Expenses, the First Lien Administrative Agent, for the benefit of the First Lien Lenders (excluding the Credit Support Provider), in respect of the First Lien Obligations (other than the Assigned Interests), is hereby granted pursuant to Sections 361 and 363 of the Bankruptcy Code, valid, binding, enforceable and perfected replacement liens upon and security interests in all Collateral (the "*Senior Replacement Liens*"), provided, that with respect to any leased property of the Debtors that is subject to a lease that prohibits a leasehold mortgage or lien thereon, the Senior Replacement Liens will be limited to and shall attach solely to any proceeds of the assignment of such lease. The Senior Replacement Liens shall be junior and subordinate only to (i) the DIP Liens, (ii) the Permitted Priority Liens, (iii) the Carve Out Expenses, and (iv) any other liens permitted to be senior to the Senior Liens by the First Lien Loan Documents.

b.   *First Lien Section 507(b) Priority Claim.* To the extent that the Senior Replacement Liens are insufficient protection against the diminution in value of their interests in the Pre-Petition Collateral (including Cash Collateral) on account of the Debtors' use of such Pre-Petition Collateral (including Cash Collateral), the incurrence of the DIP Obligations, the imposition of the automatic stay and the

subordination to the Carve Out Expenses, the First Lien Administrative Agent, for the benefit of the First Lien Lenders (excluding the Credit Support Provider), in respect of the First Lien Obligations (other than the Assigned Interests), is hereby granted, pursuant to Section 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Cases and any successor cases (including the conversion of any of the Cases to a chapter 7 proceeding, the *"Successor Cases"*) subject to section 726 of the Bankruptcy Code (the *"First Lien Adequate Protection Claim"*). The First Lien Adequate Protection Claim shall be junior and subordinate only to (i) the right of payment of the DIP Obligations owing to the DIP Lenders, (ii) the Superpriority Claim granted in favor of DIP Agent, for the benefit of itself and the DIP Lenders, pursuant to this Final Order, and (iii) the Carve Out Expenses.

   c. *Payment of Fees, Costs and Expenses*: The DIP Agent and the First Lien Administrative Agent shall receive from the Debtors reimbursement of all fees and expenses incurred or accrued, whether prior to or after the Commencement Date, by the DIP Agent and the First Lien Administrative Agent, under the DIP Loan Documents and the First Lien Loan Documents, respectively, including, without limitation, the reasonable fees and disbursements of their financial advisors and counsel, including (i) Klee, Tuchin, Bogdanoff & Stern, LLP, (ii) Pachulski, Stang, Ziehl & Jones LLP, (iii) Schulte, Roth & Zabel LLP and (iv) Conway, Del Genio, Gries & Co., LLC. None of the fees and expenses payable pursuant to this Section 2.4.2(c) shall be subject to separate approval by this Court, but this Court shall resolve any dispute as to the reasonableness of such fees and expenses. No recipient of any such payment shall be required to file any interim or final fee application with respect thereto. The Debtors shall pay the fees and expenses provided for in this Section 2.4.2(c) promptly (but no later than three (3) business days) after invoices for such fees and expenses (which invoices may be in summary form) have been received by the Debtors. The DIP Agent, First Lien Administrative Agent, or relevant professional, shall provide to the Committee

and United States Trustee a copy of any such invoice.

### 2.4.3 Lee Parties Adequate Protection.

a. *Lee Replacement Liens*: As adequate protection for the diminution in value of their interests in the Pre-Petition Collateral (including Cash Collateral) on account of the Debtors' use of such Pre-Petition Collateral (including Cash Collateral), the imposition of the automatic stay, the incurrence of the DIP Obligations, and the subordination to the Carve Out Expenses, the Lee Parties are hereby granted, pursuant to Sections 361 and 363 of the Bankruptcy Code, valid, binding, enforceable and perfected junior replacement liens upon and security interests in all Collateral (the "***Lee Replacement Liens***") for their claims under the Sponsor Loan Documents and in connection with the Assigned Interests and Assigned Interest Expenses, provided, that with respect to any leased real property of the Debtors that is subject to a lease that prohibits a leasehold mortgage or lien thereon, the Lee Replacement Liens will be limited to and shall attach solely to any proceeds of the assignment of such lease. The Lee Replacement Liens shall be junior and subordinate to (i) the DIP Liens, (ii) the Permitted Priority Liens, (ii) the Carve Out Expenses (iv) the Senior Liens and any other liens permitted to be senior to the Senior Liens by the First Lien Loan Documents, (v) the Senior Replacement Liens, and (vi) all other liens and security interests granted for the benefit of DIP Lender and the First Lien Lenders in the Collateral. The Lee Parties shall have no right to seek or exercise any rights or remedies in respect of the Lee Replacement Liens (whether in these Cases or any subsequently converted case(s)) until all DIP Obligations have been indefeasibly paid and satisfied in full in accordance with the DIP Loan Documents and this Final Order, and until the "Payment in Full Requirements" (as such term is defined in the Sponsor Loan Documents and/or the Credit Support Agreement, as applicable) are satisfied.

b. *Lee Section 507(b) Priority Claim.* To the extent that the Lee Replacement Liens are inadequate to provide sufficient protection for the diminution

in value of the Lee Parties' interests in the Pre-Petition Collateral (including Cash Collateral) on account of the Debtors' use of such Pre-Petition Collateral (including Cash Collateral), the incurrence of the DIP Obligations, the imposition of the automatic stay and the subordination to the Carve Out Expenses, the Lee Parties are hereby granted, pursuant to Section 507(b) of the Bankruptcy Code, an allowed junior superpriority administrative expense claim in each of the Cases and any Successor Cases subject to section 726 of the Bankruptcy Code (the "***Lee Adequate Protection Claim***"). The Lee Adequate Protection Claim shall be junior and subordinate to (i) the right of payment of the DIP Obligations owing to the DIP Lenders, (ii) the Superpriority Claim granted in favor of DIP Agent, for the benefit of itself and the DIP Lenders, pursuant to this Final Order, (iii) the Carve Out Expenses, and (iv) the First Lien Adequate Protection Claim.

For the avoidance of doubt, the adequate protection granted to the Lee Parties under this Section 2.4.3 shall be the only adequate protection granted to the Lee Parties in respect of obligations under the First Lien Loan Documents, Credit Support Agreement (including the Assigned Interests and Assigned Interest Expenses) and the Sponsor Loan Documents.

2.4.4   Second Lien Adequate Protection.

a.   *Junior Lien Replacement Liens.*  As adequate protection for the diminution in value of their interests in the Pre-Petition Collateral (including Cash Collateral) on account of the Debtors' use of such Pre-Petition Collateral (including Cash Collateral), the imposition of the automatic stay, the incurrence of the DIP Obligations, and the subordination to the Carve Out Expenses, the Second Lien Administrative Agent, for the benefit of the Second Lien Lenders, is hereby granted, pursuant to Sections 361 and 363 of the Bankruptcy Code, valid, binding, enforceable and perfected junior and subordinate replacement liens upon and security interests in all Collateral (the "***Junior***

*Replacement Liens*"), provided, that with respect to any leased real property of the Debtors that is subject to a lease that prohibits a leasehold mortgage or lien thereon, the Junior Replacement Liens will be limited to and shall attach solely to any proceeds of the assignment of such lease. The Junior Replacement Liens shall be junior and subordinate to (i) the DIP Liens, (ii) the Permitted Priority Liens, (iii) the Carve Out Expenses (iv) the Senior Liens and any other liens permitted to be senior to the Senior Liens by the First Lien Loan Documents, (v) the Senior Replacement Liens, (vi) all other liens and security interests granted for the benefit of the DIP Lenders and the First Lien Lenders in the Collateral, (vii) the Lee Replacement Liens, and (viii) any other valid, perfected, enforceable and non-avoidable lien that is senior to the Junior Liens. The Second Lien Administrative Agent and the Second Lien Lenders shall have no right to seek or exercise any rights or remedies in respect of the Junior Replacement Lien (whether in these Cases or any subsequently converted case(s)) until all DIP Obligations have been indefeasibly paid and satisfied in full in accordance with the DIP Loan Documents and this Final Order, and until the Discharge of First Lien Obligations (as such term is defined in the First Lien Loan Documents) has occurred.

b.      *Second Lien Section 507(b) Priority Claim*: To the extent that the Junior Replacement Liens are inadequate to provide sufficient protection for the diminution in value of the interest of the Second Lien Administrative Agent and the Second Lien Lenders in the Pre-Petition Collateral (including Cash Collateral) on account of the Debtors' use of such Pre-Petition Collateral (including Cash Collateral), the incurrence of the DIP Obligations, the imposition of the automatic stay and the subordination to the Carve Out Expenses, the Second Lien Administrative Agent, for the

benefit of Second Lien Lenders, is hereby granted, pursuant to Section 507(b) of the Bankruptcy Code, an allowed junior superpriority administrative expense claim in each of the Cases and any Successor Cases subject to section 726 of the Bankruptcy Code (the "*Second Lien Adequate Protection Claim*"). The Second Lien Adequate Protection Claim shall be junior and subordinate to (i) the right of payment of the DIP Obligations owing to the DIP Lenders, (ii) the Superpriority Claim granted in favor of DIP Agent, for the benefit of itself and the DIP Lenders, pursuant to this Final Order, (iii) the Carve Out Expenses, (iv) the First Lien Adequate Protection Claim, and (v) the Lee Adequate Protection Claim.

Section 3.    Authorization to Pay Professional Fees of DIP Agent and DIP Lenders.

3.1    Any and all fees paid or required to be paid in connection with the DIP Loan Documents (including, but not limited to, the reasonable fees and expenses of the DIP Agent and the DIP Lenders) are hereby authorized and shall be paid as set forth in the DIP Credit Agreement and Section 2.4.2.c, above.

Section 4.    Sale Process.

4.1    Sale Process Generally.    The Debtors have indicated that they intend to conduct an accelerated process to sell all or substantially all of their assets or equity. The Debtors shall provide a weekly telephonic update on their sale process to the DIP Agent and shall provide other updates on the sale process as the DIP Agent may request.

4.2    Sale Milestones.    An Event of Default under the DIP Facility will occur if the Debtors fail to achieve the following timeline milestones in connection with the sale of all or substantially all of their assets or equity interests pursuant to Section 363 of the Bankruptcy Code, in each case in a manner satisfactory to the DIP Agent and the DIP Lenders (the "*Sale Milestone*s"):

a.    entry of an order, satisfactory to the DIP Agent and DIP Lenders in

their sole and absolute discretion, approving the Debtors' retention of an investment banking firm acceptable to the DIP Agent and the DIP Lenders, no later than July 25, 2011;

b.    completion of an offering memorandum, teaser and nondisclosure agreement no later than twenty one (21) days after the Commencement Date;

c.    entry of an order, satisfactory to the DIP Agent and DIP Lenders in their sole and absolute discretion, approving sale procedures (the "*Sale Procedures Order*") no later than July 25, 2011;

d.    conduct an auction, if more than one bona fide offer meeting the conditions established by the Debtors with the approval of the DIP Agent and DIP Lenders is received, no later than August 31, 2011 or such later date as may be consented to by the DIP Agent in its sole and absolute discretion;

e.    entry of a final order of the Court, satisfactory to the DIP Agent and DIP Lenders in their sole and absolute discretion, approving the sale (the "*Sale Order*") no later than October 4, 2011 or such later date as may be consented to by the DIP Agent in its sole and absolute discretion; and

f.    close the sale no later than twenty one (21) days after entry of the Sale Order, provided that if on such date the only remaining condition to the closing of the sale is the expiration of the Hart-Scott-Rodino waiting period, such 21 day period shall be extended

to the earlier of: (i) five (5) days following the expiration of the Hart-Scott-Rodino waiting period and (ii) forty-five (45) days following the entry of the Sale Order, or, in each case, such later date as may be consented to by the DIP Agent in its sole and absolute discretion.

Section 5.     Cash Management System; Control Over Debtors' Accounts.  The Debtors shall maintain their existing cash management system to the extent set forth in the DIP Loan Documents unless the DIP Agent, in its sole and absolute discretion, consents in writing to any proposed modification to such cash management system; provided, that the Debtors shall be authorized, with the consent of the DIP Agent and First Lien Administrative Agent to enter into amendments to their Existing Cash Management Agreements (as defined in the DIP Credit Agreement) consistent with the terms of any applicable orders of this Court.  In addition, the DIP Agent shall be deemed, without any further action of any kind, to have "control" over all of the Debtors' bank accounts within the meaning of Sections 8-106, 9-104, 9-105, 9-106, 9-107 and 9-314 of the New York Commercial Code.

Section 6.     Proof of Claim.  The First Lien Agent, on behalf of itself and the First Lien Lenders, shall be deemed to have filed a timely proof of claim in the Cases in an amount equal to no less than $129.9 million, exclusive of all accrued and unpaid interest, costs, expenses, and fees owed to the First Lien Administrative Agent and First Lien Lenders.  The First Lien Administrative Agent shall not be required to file any other proof of claim in the Cases (or any Successor Cases) on behalf of the First Lien Lenders setting forth the First Lien Obligations, or any portion thereof.  Notwithstanding any provision to the contrary in any order to be entered by the Court concerning the establishment of a bar date in any of the Cases or in any Successor Cases, the First Lien Administrative Agent, on behalf of itself and the First Lien Lenders, is

hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it deems appropriate) one or more proofs of claim in each of the Cases or in any Successor Cases for any claim allowed herein. Any order entered, or to be entered, by the Court concerning the establishment of a bar date in any of the Cases or in any Successor Cases shall not apply to the DIP Agent, the DIP Lenders, the First Lien Administrative Agent, and the First Lien Lenders. Subject to Section 9.1 hereof, any and all payments made and accepted by the First Lien Administrative Agent on behalf of the First Lien Lenders or made directly to the First Lien Lenders, whether pre-petition or post-petition, in connection with the First Lien Obligations or the Financing Orders are final and not subject to avoidance or recovery by the Debtor or any other entity under chapter 5 of the Bankruptcy Code or otherwise.

Section 7.    Default; Rights and Remedies; Relief from Stay.

7.1    Events of Default. The occurrence of any of the following events shall constitute an "*Event of Default*" under the DIP Loan Documents:

a.    the Debtors' failure to timely achieve any of the Sale Milestones;

b.    a plan of reorganization or liquidation is proposed which does not provide for termination of the commitment under the DIP Facility and payment in full of the DIP Obligations and the First Lien Obligations (other than the Assigned Interests) in cash on the effective date of such plan;

c.    the entry of an order dismissing any of the Cases that does not provide for the termination of the commitment under the DIP Facility and payment in full of the DIP Obligations and the First Lien Obligations (other than the Assigned Interests) in cash prior to dismissal;

d.    the entry of an order of the Court granting relief from the automatic stay to the holder of any claim against one or more of the Debtors equal to or

exceeding $100,000;

     e.     if any material contract of the Debtors is rejected or otherwise terminated or any material property of the Debtors is sold, in each instance, without the express written consent of the DIP Agent in its sole and absolute discretion;

     f.     any Debtor's failure to perform, in any respect, any of the terms, conditions or covenants or their obligations under this Final Order; or

     g.     any other Event of Default under the DIP Credit Agreement or any of the other DIP Loan Documents.

7.2    <u>Rights and Remedies Upon Event of Default</u>. Upon the occurrence of and during the continuance of an Event of Default, (i) the Debtors shall be bound by all restrictions, prohibitions and other terms as provided in this Final Order, the DIP Credit Agreement and the other DIP Loan Documents, (ii) the DIP Agent, on behalf of itself and the DIP Lenders, shall be entitled to take any act or exercise any right or remedy (subject to Section 7.4 below) as provided in this Final Order or the DIP Loan Documents, including, without limitation, immediately suspending or immediately terminating the DIP Facility pending further order of the Court and (iii) the Debtors' right to use Cash Collateral shall thereupon immediately and without further action of any kind terminate pending further order of the Court. The DIP Agent and the DIP Lenders shall have no obligation to lend or advance any additional funds to or on behalf of the Debtors, or provide any other financial accommodations to the Debtors, immediately upon or after the occurrence of an Event of Default or upon the occurrence of any act, event, or condition that, with the giving of notice or the passage of time, or both, would constitute an Event of Default.

7.3    Expiration of Commitment.    Upon the earlier of (i) expiration of Borrower's authority to borrow and obtain other credit accommodations from the DIP Agent and the DIP Lenders pursuant to the terms of this Final Order and the DIP Loan Documents (except if such authority shall be extended with the prior written consent of the DIP Agent in its sole and absolute discretion, which consent shall not be implied or construed from any action, inaction or acquiescence by the DIP Agent or any DIP Lender) and (ii) the occurrence of an Event of Default set forth in Section 7.1 above, all of the DIP Obligations shall automatically become due and payable and the DIP Agent and the DIP Lenders shall be automatically and completely relieved from the effect of any stay under Section 362 of the Bankruptcy Code, any other restriction on the enforcement of their liens upon and security interests in the Collateral or any other rights granted to the DIP Agent and the DIP Lenders pursuant to the terms and conditions of the DIP Loan Documents or this Final Order, and the DIP Agent, acting on behalf of itself and the other the DIP Lenders, shall be and is hereby authorized, in its sole discretion, to take any and all actions and remedies provided to it in this Final Order, the DIP Loan Documents or applicable law which the DIP Agent may deem appropriate and to proceed against and realize upon the Collateral or any other property of the Debtors' Estates following five (5) business days' notice of the Event of Default to the Debtors, the Committee and the U.S. Trustee, unless an order of the Court is entered to the contrary. In connection with any exercise of control over the Collateral, including the liquidation of the Collateral, whether under the provisions of this Final Order or the DIP Loan Documents, the right to use or occupancy of the Debtors' leased stores by the DIP Agent and DIP Lenders is limited to the existing rights the DIP Agent and DIP Lenders may have under applicable non-bankruptcy law, if any; the written consent of the applicable landlord; or such rights granted by the Bankruptcy Court following an expedited hearing on not less than five (5) business days' notice to obtain Bankruptcy Court authorization to obtain such access and/or use rights (and providing the applicable landlord with an opportunity to object and be heard with respect to the proposed terms and conditions of such requested use and occupancy).

7.4    Relief from Automatic Stay.  The automatic stay provisions of Section 362 of the Bankruptcy Code are hereby modified without further notice, application or order of the Court to the extent necessary to permit the DIP Agent, acting on behalf of itself and the DIP Lenders, to perform any act authorized or permitted under or by virtue of this Final Order or the DIP Loan Documents, including, without limitation, (a) to implement the post-petition financing arrangements authorized by this Final Order and pursuant to the terms of the DIP Loan Documents, and (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the Collateral.  In addition, and without limiting the foregoing, upon the occurrence of an Event of Default and five (5) business days following the DIP Agent's written notice (the "*Enforcement Notice*") to counsel for the Debtors, counsel for the Committee and the U.S. Trustee, the DIP Agent, acting on behalf of itself and the DIP Lenders, shall be entitled to take any action and exercise all rights and remedies provided to it by this Final Order, the DIP Loan Documents or applicable law as the DIP Agent may deem appropriate in its sole discretion to, among other things, proceed against and realize upon the Collateral or any other assets or properties of Debtors' Estates upon which the DIP Agent, for the benefit of itself and the DIP Lenders, has been or may hereafter be granted liens or security interests to obtain the full and indefeasible repayment of all DIP Obligations; provided, however, that solely for purposes of this sentence, the automatic stay of section 362(a) of the Bankruptcy Code, to the extent applicable, shall only be deemed terminated as provided herein without the necessity of any further action by the Court in the event that the Debtors or the Committee have not obtained an order from the Court to the contrary within five (5) business days after receiving the Enforcement Notice from the DIP Agent.

Section 8.    Good Faith.  The terms of this Final Order were negotiated in good faith and at arm's length by and among the Debtors, the First Lien Administrative Agent, the First Lien Lenders, the DIP Agent and the DIP Lenders.  The DIP Agent and the DIP Lenders shall be entitled to the full protections of Section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

Accordingly, if any or all of the provisions of this Final Order are hereafter modified, vacated, or stayed, such modification, vacation, or stay shall not affect, prejudice or impair (a) the validity of any obligation, indebtedness or liability incurred by the Debtors to the DIP Agent and the DIP Lenders under the DIP Loan Documents before the effective date of such modification, vacation or stay, or (b) the validity or enforceability of any security interest, lien, priority, or other protection authorized or created hereby. Notwithstanding any such modification, vacation, or stay, any indebtedness, obligations or liabilities incurred by the Debtors to the First Lien Administrative Agent, the First Lien Lenders, the DIP Agent and the DIP Lenders before the effective date of such modification, vacation, or stay shall be governed in all respects by the original provisions of this Final Order, and the First Lien Administrative Agent, the First Lien Lenders, the DIP Agent and the DIP Lenders shall be entitled to all the rights, remedies, privileges and benefits granted herein with respect to all such indebtedness, obligations or liabilities.

Section 9.    Representations; Covenants; and Waivers.

9.1    Objections to First Lien Obligations.    Any action, claim or defense (hereinafter, an "**Objection**") that seeks to object to, challenge, contest or otherwise invalidate or reduce, whether by setoff, recoupment, counterclaim, deduction, subordination, disgorgement, cure, reinstatement or claim of any kind: (a) the existence, validity, nonavoidability, priority or amount of the First Lien Obligations (excluding the Assigned Interests), the Assigned Interests, the Assigned Interest Expenses, or the Sponsor Loan Obligations, or (b) the extent, legality, validity, priority, perfection, nonavoidability or enforceability of the Senior Liens, shall be filed with the Court (x) absent the express written consent of the DIP Agent in its sole and absolute discretion, by the Committee (which shall have standing to assert an Objection without further order of the Court), and no other party, by no later than September 9, 2011. If any such Objection is timely filed and successfully pursued, nothing in this Final Order shall prevent the Court from granting appropriate relief with respect to the First Lien Obligations (excluding the Assigned Interests), the Assigned Interests, the Assigned Interest Expenses, the Sponsor Loan

Obligations, or the Senior Liens in the Pre-Petition Collateral. If no Objection is timely filed, or if an Objection is timely filed but denied, (a) the First Lien Obligations, the Assigned Interest Expenses and the Sponsor Loan Obligations shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim, avoidance, subordination, deduction, cure, reinstatement or claim of any kind, and shall not be subject to any further objection or challenge by any party at any time, and the pre-petition liens and security interests in favor of the First Lien Administrative Agent, the First Lien Lenders and the Lee Parties in the Pre-Petition Collateral shall be deemed legal, valid, perfected, enforceable, and non-avoidable for all purposes and of first and senior priority, subject to only the Permitted Priority Liens, the Carve Out Expenses, and the DIP Liens, and (b) the First Lien Administrative Agent, the First Lien Lenders, the Lee Parties and each of their agents, officers, directors, employees, attorneys, professionals, successors, and assigns shall be deemed released and discharged from any and all claims and causes of action related to or arising out of the First Lien Loan Documents, the Credit Support Agreement and the Sponsor Loan Documents and shall not be subject to any further objection or challenge by any party at any time.

9.2     Debtors' Waivers. It shall be an immediate event of default under the DIP Facility if, at any time during the Cases, the Debtors seek authority to use Cash Collateral of the DIP Agent and the DIP Lenders under Section 363 of the Bankruptcy Code without the written consent of the DIP Agent in its sole and absolute discretion; provided, that no such consent shall be implied from any action, inaction, or acquiescence by the DIP Agent or any DIP Lender. At all times during the Cases, and whether or not an Event of Default has occurred, the Debtors irrevocably waive any right that they may have to (i) obtain post-petition loans or other financial accommodations pursuant to Section 364 of the Bankruptcy Code, other than from the DIP Agent and the DIP Lenders or as may be otherwise expressly permitted pursuant to the DIP Loan Documents, (ii) challenge the application of any payments authorized by the Financing Orders as pursuant to Section 506(b) of the Bankruptcy Code, (iii) propose, support or file a plan of reorganization or liquidation that does not provide for the indefeasible payment in cash in full

and satisfaction of all DIP Obligations and all First Lien Obligations (other than the Assigned Interests) on the effective date of such plan in accordance with the terms and conditions set forth in the DIP Credit Agreement, or (iv) seek relief under the Bankruptcy Code, including without limitation, under Section 105 of the Bankruptcy Code, to the extent any such relief would directly restrict or impair the rights and remedies of the DIP Agent or the DIP Lenders under the Financing Orders and the DIP Loan Documents or the DIP Agent's and the DIP Lenders' exercise of such rights or remedies; provided, however, that the DIP Agent, in its sole and absolute discretion, may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent or any DIP Lender.

9.3     Section 506(c) Claims.  No costs or expenses of administration which have or may be incurred in the Cases shall be charged against the DIP Agent, the DIP Lenders, the First Lien Administrative Agent, the First Lien Lenders, the Lee Parties, their respective claims or interests, the Collateral and/or Pre-Petition Collateral pursuant to Section 506(c) of the Bankruptcy Code or otherwise without the prior written consent of the DIP Agent and First Lien Administrative Agent in their sole and absolute discretion, and no such consent shall be implied from any other action, inaction or acquiescence by the DIP Agent, any DIP Lender, the First Lien Administrative Agent, the Lee Parties, or any First Lien Lender.

9.4     Collateral Rights.  Until all of the DIP Obligations shall have been indefeasibly paid and satisfied in full:

9.4.1   [INTENTIONALLY RESERVED]; and

9.4.2   upon and after the occurrence of an Event of Default, and subject to the DIP Agent providing five (5) business days prior written notice as set forth in Section 7.4, above, in connection with a liquidation of any of the Collateral, the DIP Agent (or any of its employees, agents, consultants, contractors or other professionals), on behalf of itself and the DIP Lenders, shall have the right, at the sole cost and expense of Debtors, expressly subject to the last sentence of Section 7.3, above, to: (i) enter upon, occupy and use any real or personal property, fixtures, equipment, leasehold interests or warehouse arrangements owned or leased by

Debtors and (ii) use any and all trademarks, tradenames, copyrights, licenses, patents or any other similar assets of Debtors, which are owned by or subject to a lien of any third party and which are used by Debtors in their businesses, <u>provided</u>, that all rights of any such third parties are fully preserved.

Section 10.    <u>Other Rights and Obligations</u>.

     10.1    <u>No Modification or Stay of This Final Order</u>.    Notwithstanding (i) any stay, modification, amendment, supplement, vacating, revocation or reversal of this Final Order, the DIP Loan Documents or any term hereunder or thereunder, or (ii) the dismissal or conversion of one or more of the Cases (each, a "***Subject Event***"), (x) the acts taken by the DIP Agent and the DIP Lenders in accordance with this Final Order, and (y) the DIP Obligations incurred or arising prior to the DIP Agent's actual receipt of written notice from Debtors expressly describing the occurrence of such Subject Event shall, in each instance, be governed in all respects by the original provisions of this Final Order, and the acts taken by the DIP Agent and the DIP Lenders in accordance with this Final Order, and the liens granted to the DIP Agent and the DIP Lenders in the Collateral, and all other rights, remedies, privileges, and benefits in favor of the DIP Agent and the DIP Lenders pursuant to this Final Order and the DIP Loan Documents shall remain valid and in full force and effect pursuant to Section 364(e) of the Bankruptcy Code. For purposes of this Final Order, the term "appeal", as used in Section 364(e) of the Bankruptcy Code, shall be construed to mean any proceeding for reconsideration, amending, rehearing, or re-evaluating this Final Order by this Court or any other tribunal.

     10.2    <u>Power to Waive Rights; Duties to Third Parties</u>.    Subject to Section 9.1 hereof, the DIP Agent and the DIP Lenders, in their sole and absolute discretion, shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this Final Order in respect of the DIP Agent and the DIP Lenders (the "***DIP Lender Rights***"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any DIP Lender Right(s). Any waiver by the DIP Agent or any DIP Lender of any DIP Lender Rights shall not be or constitute a continuing waiver. Any delay

in or failure to exercise or enforce any DIP Lender Right shall not constitute a waiver of such DIP Lender Right, subject the DIP Agent or any DIP Lender to any liability to any other party, or cause or enable any other party to rely upon or in any way seek to assert a defense to any obligation owed by the Debtors to the DIP Agent or any DIP Lender.

10.3    Disposition of Collateral.  The Debtors shall not, except in the ordinary course of business, sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral without the prior written consent of the DIP Agent in its sole and absolute discretion (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Agent or any DIP Lender) and an order of this Court.  The Debtors shall not, without the consent of the DIP Agent in its sole and absolute discretion, (a) enter into any agreement to return any goods to any of their creditors for application against any pre-petition indebtedness under any applicable provision of Section 546 of the Bankruptcy Code, or (b) consent to any creditor taking any setoff against any of its pre-petition indebtedness based upon any such return pursuant to Section 553(b)(1) of the Bankruptcy Code or otherwise.

10.4    Reservation of Rights.  The terms, conditions and provisions of this Final Order are in addition to and without prejudice to the rights of (i) the DIP Lenders, (ii) the DIP Agent, on behalf of itself and the DIP Lenders, (iii) the First Lien Lenders, and (iv) the First Lien Administrative Agent on behalf of the First Lien Lenders, to pursue any and all rights and remedies under the Bankruptcy Code, the Interim Order, the DIP Loan Documents, the First Lien Loan Documents, or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the Collateral or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Estates.

10.5    Binding Effect of Final Order.

10.5.1 Immediately upon entry by this Court, this Final Order shall be valid and binding upon and inure to the benefit of the DIP Agent, the DIP Lenders, the First Lien Administrative Agent, the First Lien Lenders, the Debtors and the property of the Debtors' estates, all other creditors of any of the Debtors, the Committee, and all other parties in interest and their respective successors and assigns (including any chapter 11 or chapter 7 trustee or any other fiduciary hereafter appointed as a legal representative of the Debtors), in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

10.5.2 Any order dismissing one or more of the Cases under Section 1112 or otherwise shall be deemed to provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (a) the Superpriority Claim, the DIP Liens, the Senior Liens, the Senior Replacement Liens, the First Lien Adequate Protection Claim and the Lee Adequate Protection Claim shall continue in full force and effect notwithstanding such dismissal until the DIP Obligations and First Lien Obligations (excluding the Assigned Interests) are indefeasibly paid and satisfied in full, and (b) this Court shall retain jurisdiction to the greatest extent permitted by applicable law, notwithstanding such dismissal, for the purposes of enforcing the Superpriority Claim, the DIP Liens, the Senior Liens, the Senior Replacement Liens, the Lee Replacement Liens, the First Lien Adequate Protection Claim and the Lee Adequate Protection Claim.

10.6    Restrictions on Cash Collateral Use, Additional Financing, Plan Treatment. All post-petition advances and other financial accommodations under the DIP Credit Agreement are made in reliance on the Interim Order and this Final Order and there shall not at any time be entered in the Cases, or in any subsequently converted case under Chapter 7 of the Bankruptcy Code, any order that (a) authorizes (i) the use of Cash Collateral of the Debtors in which the DIP Agent, the DIP Lenders, the First Lien Administrative Agent or the First Lien Lenders have an interest, unless such use of Cash Collateral strictly complies with both the DIP Loan Documents and then-existing Budget or (ii) the sale, lease, or other disposition of property of any Debtor's Estate subject to a lien or security interest granted to the DIP Agent, for the

benefit of the DIP Lenders, or the First Lien Administrative Agent, for the benefit of First Lien Lenders, except as expressly permitted hereunder or in the DIP Loan Documents, or (b) authorizes under Section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property in which the DIP Agent, for the benefit of the DIP Lenders, holds a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to the DIP Agent, for the benefit of the DIP Lenders, herein; unless, in each instance (i) the DIP Agent shall have given its express prior written consent with respect thereto (such consent to be in the DIP Agent's absolute and sole discretion), no such consent being implied from any other action, inaction or acquiescence by the DIP Agent or any DIP Lender, or (ii) such other order (x) requires that all DIP Obligations shall first be indefeasibly paid and satisfied in full in accordance with the terms of the DIP Credit Agreement and the other DIP Loan Documents, including, without limitation, all debts and obligations of the Debtors to the DIP Agent and the DIP Lenders which arise or result from the obligations, loans, security interests and liens authorized herein, on terms and conditions acceptable to the DIP Agent, (y) pays all outstanding adequate protection obligations owed to the First Lien Administrative Agent and First Lien Lenders as of the date of the entry of such other order, and (z) provides the same adequate protection to the First Lien Administrative Agent and First Lien Lenders (other than the holder of the Assigned Interests) as provided in the Financing Orders. The security interests and liens granted to or for the benefit of the DIP Lenders hereunder and the rights of the DIP Agent and the DIP Lenders pursuant to the Financing Orders shall not be altered, modified, extended, impaired, or affected by any plan of reorganization or liquidation of Debtors without the express prior written consent of the DIP Agent (such consent to be in the DIP Agent's absolute and sole discretion).

        10.7    No Owner/Operator Liability. In determining to make any loan under the DIP Credit Agreement or any Financing Order, or in exercising any rights or remedies, and when permitted pursuant to the DIP Credit Agreement or any Financing Order, the DIP Agent or the

DIP Lenders shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute), solely by reason of their status of DIP Agent or DIP Lenders.

10.8 <u>Marshalling</u>. In no event shall the DIP Agent or any DIP Lender be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Collateral. The DIP Agent and the DIP Lenders shall be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the DIP Agent and the DIP Lenders with respect to proceeds, products, offspring or profits of any of the Collateral.

10.9 <u>Term; Termination</u>. The term of the financing arrangements among Debtors, the DIP Agent and the DIP Lenders authorized by this Final Order may be terminated pursuant to the terms of the DIP Credit Agreement and this Final Order.

10.10 <u>Objections Overruled</u>. All objections to the entry of this Final Order are, to the extent not withdrawn or resolved, hereby overruled.

Section 11. <u>Findings and Conclusions.</u> This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable immediately upon the Court's execution hereof.

Section 12. <u>Final Order Governs.</u> In the event that any provision of this Final Order conflicts with any term of the DIP Loan Documents this Final Order shall govern.

Section 13. <u>No Prejudice.</u> This Final Order shall not prejudice, impair or adversely affect any of the First Lien Administrative Agent's and the First Lien Lenders' rights in connection with any of the First Lien Loan Documents, including any third party guarantees.

Section 14.    Retention of Jurisdiction.    The Court has and will retain jurisdiction to interpret and enforce the provisions of this Final Order.

Dated: July 21, 2011
      Wilmington, Delaware

THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE