

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
: 
In re : Chapter 11
:
DSI HOLDINGS, INC., et al.,[1] : Case No. 11-11941 (KJC)
:
Debtors. : (Jointly Administered)
:
: Re: Docket No. 19
---------------------------------------------------------------x

**ORDER: (1) APPROVING OVERBID AND
SALE PROCEDURES, (2) APPROVING EXPENSE REIMBURSEMENT,
(3) APPROVING ASSUMPTION PROCEDURES AND RELATED NOTICES,
(4) SCHEDULING THE SALE HEARING, AND (5) GRANTING RELATED RELIEF**

The Court having considered the *Motion Requesting (A) the Scheduling of an Auction and Sale Hearing in Connection with the Sale of the Debtors' Assets, (B) Approval of Bidding Procedures for Such Assets, (C) Approval of Purchase Agreement with Stalking Horse Bidder, (D) Approval of Expense Reimbursement to Stalking Horse Bidder, (E) Approval of the Form and Scope of Notice of Auction and Sale Hearing, (F) Approval of Procedures for the Assumption and Assignment of Contracts and Leases to the Purchaser, and (G) Approval of Sale of the Debtors' Assets to the Purchaser* (the "Motion")[2] filed by DSI Holdings, Inc. and its affiliated debtors and debtors in possession in the above-captioned cases (the "Debtors"), any responsive pleadings filed in connection with the Motion, the record in the above-captioned

---

[1] The last four digits of DSI Holdings, Inc.'s federal tax identification number are 9441. The mailing address for DSI Holdings, Inc. is 9401 Blue Grass Road, Philadelphia, PA 19114. Due to the large number of Debtors in these cases, which are being jointly administered for procedural purposes, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses is not provided herein. A complete list of such information may be obtained on the website of the Debtors' noticing and claims agent at http://www.kccllc.net/debshops.

[2] Capitalized terms not otherwise defined in this Order shall have the meanings ascribed to them in the Motion.

cases, and the representations of counsel at the hearing on the Motion held on July 21, 2011 (the "Hearing"); and the Court having determined that notice of the Motion was adequate and sufficient; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A. The Court has jurisdiction over this matter and over the property of the Debtors and their respective bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(1)(A), (M), (N), and (O). The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105, 363, 364, 365 and Fed. R. Bankr. P. 2002, 6004, 6006, 9008, 9014 and 9019. Venue of these cases and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B. The relief granted herein is in the best interests of the Debtors, their estates, their stakeholders, and other parties in interest.

C. The notice of the Motion and the Hearing given by the Debtors constitutes due and sufficient notice thereof.

D. The Debtors have articulated good and sufficient reasons for the Court to (i) approve the Bid Procedures, (ii) approve the Expense Reimbursement as provided in that certain Asset Purchase Agreement ("Asset Purchase Agreement") dated as of June 24, 2011, attached hereto as Exhibit A, (iii), approve the form and manner of notice of the Motion, the Auction, the Sale Hearing, and the assumption and assignment of the contracts listed on Schedule 1.1(c) to the Asset Purchase Agreement, as that schedule may be amended (the "Purchased Contracts"), and (iv) set the date of the Auction and the Sale Hearing.

E. The Expense Reimbursement, to the extent payable under the Asset Purchase Agreement, (i) shall be deemed an actual and necessary cost and expense of preserving the

Debtors' estates, (ii) is of substantial benefit to the Debtors' estates, (iii) is reasonable and appropriate, including in light of the size and nature of the Sale Transaction, the necessity to announce a sale transaction for the Debtors, and the efforts that have been and will be expended by the Stalking Horse Bidder, (iv) has been negotiated by the parties and their respective advisors at arm's length and in good faith, and (v) is necessary to ensure that the Stalking Horse Bidder will continue to pursue the proposed Sale Transaction. The Expense Reimbursement is a material inducement for, and condition of, the Stalking Horse Bidder's entry into the Stalking Horse Bid (as defined below). The Stalking Horse Bidder is unwilling to commit to purchase the Purchased Assets under the terms of the Asset Purchase Agreement unless the Stalking Horse Bidder is assured the Expense Reimbursement, if it is not the purchaser of the assets under the Asset Purchase Agreement.

F.  The Bid Procedures are reasonable and appropriate and represent a fair and appropriate method for maximizing the realizable value of the Debtors' assets.

**THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:**

1.  The Motion is GRANTED.

2.  Any objections filed in response to the Motion and the relief granted herein, to the extent not resolved as set forth herein or at the Hearing, are hereby overruled.

3.  The Sale Transaction contemplated by the Asset Purchase Agreement is designated as the "Stalking Horse Bid."

4.  Upon execution of a confidentiality agreement, any person identified by the Debtors, with the assistance of their financial advisors, as reasonably likely to be a Qualified Bidder (as defined below) that wishes to conduct due diligence on the Debtors or their assets with respect to a potential overbid may be granted access to all material information that has been or will be provided to the Stalking Horse Bidder.

5.  Any prospective bidder (each a "Potential Bidder") that wishes to participate in the bidding process for the Purchased Assets must, no later than August 24, 2011 (i.e., seven days prior to the Auction) at 5:00 p.m. (Eastern Daylight Time) (the "Bid Deadline"):

   a.  Submit to the Debtors, the official committee of unsecured creditors appointed in these chapter 11 cases (the "Committee") and Ableco Finance LLC ("Ableco"), through their respective counsel, an irrevocable offer in the form of an executed asset purchase agreement (the "Modified Agreement") without financing or due diligence contingencies, at a price that conforms with the following Paragraph 5.b, and on such other terms that are no less favorable to the Debtors than those contained in the Asset Purchase Agreement. The Potential Bidder shall also submit a "blacklined" or otherwise marked copy of the Modified Agreement reflecting the differences between the Modified Agreement and the Asset Purchase Agreement executed by the Stalking Horse Bidder.

   b.  Agree, in such Modified Agreement, to a purchase price that provides for the following (the "Purchase Price"): (a) assumption of the Assumed Liabilities identified in the Asset Purchase Agreement; (b) replacement of the outstanding letters of credit posted by Lee in favor of the Factor/Vendors (as defined in the Asset Purchase Agreement); and (c) payment in cash at closing in an initial minimum amount equal to the sum of: (i) no less than $77,000,000 plus (ii) the Debtors' outstanding obligations under the DIP Credit Agreement as of the closing of the Modified Agreement plus (iii) the wind-down costs of the Debtors to the extent and in the amounts expressly specified in the Asset Purchase Agreement plus (iv) the Expense Reimbursement.

   c.  Make a good faith cash deposit in the form of a cashier's check or wire transfer, in an amount not less than 10% of the amount set forth in clause (c)(i) of the definition

4

of Purchase Price above (i.e., no less than $7,700,000) (the "Bid Deposit") into an interest bearing escrow account (the "Segregated Account") that shall be opened by the Debtors for this purpose; provided that the Stalking Horse Bidder shall not be required to make a Bid Deposit. The Bid Deposit shall immediately become non-refundable (subject to the next sentence) and credited toward the Purchase Price, if and when the transaction with the Potential Bidder making such deposit is approved by the Court (the "Winning Bid" and the "Winning Bidder") at the Sale Hearing. If a Potential Bidder's bid is not designated as a Qualified Bid (as defined below), or such bid is not approved as the Winning Bid or the Back-Up Bid at the Sale Hearing, the Bid Deposit of such bidder, plus accrued interest, if any, will be returned to such bidder within three (3) business days after the Sale Hearing.

d. Provide written evidence reasonably satisfactory to the Debtors, Ableco and the Committee of its financial ability to (i) fully and timely perform all obligations under the Modified Agreement if it is declared to be the Winning Bidder, and (ii) provide adequate assurance of future performance under all contracts and leases to be assigned to it.

e. Disclose any connections or agreements with the Debtors, the Stalking Horse Bidder, any other known Potential Bidder or Qualified Bidder (as defined below), and/or any officer, director or direct or indirect equity security holder of the Debtors.

6. If a Potential Bidder delivers all of the materials described in paragraph 5, above, (including the Bid Deposit) by the Bid Deadline, the Debtors, in reasonable consultation with the Committee and Ableco, will determine whether (i) the Potential Bidder has demonstrated the financial ability to consummate the purchase of the Purchased Assets, (ii) is reasonably likely to be able to and willing to consummate the contemplated transactions and (iii) has otherwise satisfied all of the requirements described in paragraph 5, above. If so, the Debtors shall

designate the Potential Bidder as a "Qualified Bidder" and such bid as a "Qualified Bid." The Debtors shall promptly notify the Stalking Horse Bidder of the identity of any other Qualified Bidder. The Stalking Horse Bidder shall be deemed to be a Qualified Bidder and the Stalking Horse Bid shall be deemed a Qualified Bid.

7. Notwithstanding paragraph 5.b, above, a Potential Bidder who otherwise complies with paragraph 5.a and 5.c – 5.e above, may submit a partial bid on specific assets of the Debtors (a "Qualified Partial Bid"). Qualified Partial Bids may be considered by the Debtors only under the following conditions: (i) the Debtors, after consultation with the Committee, shall have obtained the express written consent of Ableco to consider such Qualified Partial Bid(s), (ii) the Debtors, after consultation with the Committee and Ableco, have reached an agreement as to the appropriate reduction in the Purchase Price under the Asset Purchase Agreement to reflect such Qualified Partial Bid(s), and (iii) the Stalking Horse Bidder has agreed to purchase the remaining Purchased Assets so that the Qualified Partial Bid(s), taken together with the Stalking Horse Bidder's agreement to purchase the remaining Purchased Assets, satisfies in full all of the requirements set forth in paragraph 5.b. above; provided, however, that the conditions set forth in (i), (ii) and (iii), immediately above, need not be satisfied if two or more Qualified Partial Bids, taken in the aggregate, would result in a Purchase Price greater than or equal to the amounts required by paragraph 5.b above and such Qualified Partial Bids, taken in the aggregate, have otherwise satisfied in full all of the requirements of paragraph 5.b above.

8. If the Debtors receive at least one (1) Qualified Bid (or sufficient Qualified Partial Bids that comply with the conditions of the preceding paragraph) from a Qualified Bidder other than the Stalking Horse Bidder prior to the Bid Deadline, then the Debtors shall notify the Stalking Horse Bidder and each other Qualified Bidder that the Debtors intend to conduct an

auction (the "Auction") to consider all Qualified Bids, subject to reasonable rules and regulations as may be established by the Debtors, in reasonable consultation with the Committee and Ableco. The Auction to determine the successful bidder for the Purchased Assets shall be held on August 31, 2011 at 10:00 a.m. (Eastern Daylight Time) at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153. Each bidder participating at the auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale. Except as expressly provided herein, the auction will be conducted openly, will be videotaped or transcribed, and all creditors will be permitted to attend. The Debtors shall file a notice announcing the results of the Auction and the identity of the Winning Bidder(s) and the Back-Up Bidder on the Court's docket and the Website (each as defined below) as soon as practicable after conclusion of the Auction.

9. Only the Stalking Horse Bidder and other Qualified Bidders may bid at the Auction. Copies of all Qualified Bids shall be provided to the Committee, the Stalking Horse Bidder and each other Qualified Bidder by August 25, 2011 at 5:00 p.m. (Eastern Daylight Time). At the commencement of the Auction, the Debtors shall identify the bid that they have determined to be the highest and/or best offer and shall permit the Stalking Horse Bidder and other Qualified Bidders to submit higher and/or better bids. Each subsequent bid must exceed the amount of the preceding bid by not less than $500,000 and shall not be modified in a manner that causes it no longer to be a Qualified Bid. The Stalking Horse Bidder shall be permitted in the Auction to credit bid the Debtors' outstanding obligations under the Loan Agreement and the DIP Credit Agreement pursuant to Bankruptcy Code section 363(k).

10. The Debtors, subject to oversight and approval by the Court, and in reasonable consultation with the Committee and Ableco, shall supervise the bidding process and conduct the

7

RLF1 4985069v.7

Auction in such a manner as to provide the Stalking Horse Bidder and other Qualified Bidders a full, fair and equal opportunity to participate in the Auction. The Debtors, in consultation with their financial advisors, their counsel and the Committee, shall determine which bid is to be recommended to the Court for approval. The Debtors shall request at the Sale Hearing that the Court authorize the Debtors to consummate the Sale Transaction to the Winning Bidder.

11. If the Debtors do not receive at least one (1) Qualified Bid from a Qualified Bidder other than the Stalking Horse Bidder, then no Auction shall be scheduled or conducted, and the Court at the Sale Hearing shall proceed to solely consider the approval of the Sale Transaction to the Stalking Horse Bidder as set forth in the Asset Purchase Agreement and shall not consider any competing or alternative offers or proposals to purchase the Purchased Assets, nor shall the Court consider any objections to the Motion that are based on the existence or potential for other or different offers or proposals to purchase the Purchased Assets.

12. If the Stalking Horse Bidder is not the Winning Bidder for the Purchased Assets, the Debtors shall, immediately upon the closing of the sale of the Purchased Assets to the Winning Bidder, reimburse the Stalking Horse Bidder for all reasonable and actual expenses (the "Expense Reimbursement") incurred by the Stalking Horse Bidder in connection with the transactions contemplated under the Asset Purchase Agreement through the date of its termination up to a maximum amount of $500,000. The Expense Reimbursement shall be paid exclusively out of and from the proceeds of the sale of the Purchased Assets and shall constitute an allowed claim against the Debtors' estates under Bankruptcy Code sections 503 and 507(a)(2).

13. The Court shall hold a hearing on September 13, 2011 at 2:00 p.m. (Eastern Daylight Time) (the "Sale Hearing") to consider the approval of the Sale Transaction as set forth

in the Motion, approve the Winning Bidder(s), approve the Back-Up Bidder, if necessary, and confirm the results of the Auction, if applicable.

14. Upon approval by the Court of the Winning Bidder, the Winning Bidder's Bid Deposit shall become non-refundable if the Asset Purchase Agreement or Modified Agreement, as the case may be, is thereafter terminated as a result of a breach by the Winning Bidder. The Bid Deposit of the Back-Up Bidder shall remain on deposit in the Segregated Account pending the Closing Date (as defined below), and such deposit shall become non-refundable if the Back-Up Bidder is declared the Winning Bidder and if the Asset Purchase Agreement or Modified Agreement, as the case may be, is thereafter terminated as a result of a breach by the Back-Up Bidder. In the event a dispute arises over whether a Bid Deposit is refundable or non-refundable, the Bid Deposit shall remain in the Segregated Account pending a determination of the dispute by the Court or written agreement of the parties.

15. If a declared Winning Bidder breaches any of its obligations under the Asset Purchase Agreement or the Modified Agreement, as applicable, the declared Winning Bidder shall forfeit all deposits made, including but not limited to the Bid Deposit, without regard to the Debtors' ultimate damages occasioned by such failure; such deposits shall be applied to the Debtors' damages, if any, and shall not constitute liquidated damages; and, notwithstanding the foregoing, the Debtors and the bankruptcy estates shall retain all other rights, remedies, claims, counterclaims, and defenses.

16. If bids have been submitted by more than one Qualified Bidder, the Qualified Bidder that makes the next-highest and/or best bid to that of the Winning Bidder shall become the back-up bidder (the "Back-Up Bidder") and such Back-Up Bidder's final and highest and/or best bid (the "Back-Up Bid") shall remain open pending the closing of the Winning Bid (the

RLF1 4985069v.7

"Closing Date"). (If a bid of the Stalking Horse Bidder is the next-highest and/or best bid to that of the Winning Bidder, then such bid of the Stalking Horse Bidder shall be the Back-Up Bid.) If the transaction does not close prior to the Closing Date (as such date may be extended pursuant to paragraph 17, below), the Back-Up Bid, as selected by the Debtors at the Auction and approved as the Back-up Bid by the Court at the Sale Hearing, shall upon notice by the Debtors to the Back-Up Bidder, be deemed the Winning Bid without further order of the Court, and the Back-Up Bidder shall be required to consummate the transaction in accordance with the Asset Purchase Agreement or Modified Agreement, as applicable. Any deemed Winning Bidder who breaches any of its obligations under the Asset Purchase Agreement or the Modified Agreement, as applicable, shall forfeit all deposits made, including but not limited to the Bid Deposit, without regard to the Debtors' ultimate damages occasioned by such failure; such deposits shall be applied to the Debtors' damages, if any, and shall not constitute liquidated damages; and, notwithstanding the foregoing, the Debtors and the bankruptcy estates shall retain all other rights, remedies, claims, counterclaims, and defenses. If the Stalking Horse Bidder is not the Winning Bidder or the Back-Up Bidder, the Stalking Horse Bidder shall have the right, but not the obligation, to keep its bid open pending the closing of a transaction with a Winning Bidder.

17. The Debtors, with the written consent of Ableco (which consent shall not be unreasonably withheld), and in consultation with the Committee, may grant any declared Winning Bidder additional time to perform and, to the extent necessary, extend the Closing Date.

18. The Debtors, with the consent of Ableco (which consent shall not be unreasonably withheld), and in consultation with the Committee, may modify the bid procedures set forth in this Order, other than the provisions of paragraph 5.b and 5.c, above, at any time prior to or during the Auction if the Debtors determine, in their reasonable judgment, that such

modifications will better promote the goals of the auction process and are in the best interest of the bankruptcy estates and the creditors thereof.

19. Objections to the Sale Transaction, if any, shall be in writing and shall be filed and served so as to be actually received by the Court and the following parties (the "Objection Recipients") **on or before August 26, 2011 at 4:00 p.m. (Eastern Daylight Time)**, provided, however, that to the extent the Winning Bidder at the Auction is an entity other than the Stalking Horse Bidder, any supplemental or further objections to the sale to the Winning Bidder shall be filed by no later than September 7, 2011 at 4:00 p.m. (Eastern Daylight Time) (the "Objection Deadlines"):

   a. DSI Holdings, 9401 Blue Grass Road, Philadelphia, Pennsylvania 19114 (Attn: Mark Hoffman);

   b. co-counsel for the Debtors, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801, Attn: Mark D. Collins, Fax: 302-498-7531 and Jason M. Madron, Fax: 302-498-7595;

   c. co-counsel for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153, Attn: Michael F. Walsh, Fax: 212-310-8007 and 200 Crescent Court, Suite 300, Dallas, TX 75201, Attn: Stephen A. Youngman, Fax: 214-746-7758;

   d. co-counsel for the Committee, Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, NY 10169, Attn: Glenn B. Rice and Enid Nagler Stuart, Fax: 212-682-6104;

   e. co-counsel for the Committee, Pepper Hamilton LLP, Hercules Plaza, Suite 510, 1313 Market Street, P.O. Box 1709, Wilmington, DE 19899, Attn: David B. Stratton, Fax: 302-656-8865;

f.  co-counsel for Ableco, Klee, Tuchin, Bogdanoff & Stern, LLP, 1999 Avenue of the Stars, 39th Floor, Los Angeles, CA 90067, Attn: Michael L. Tuchin, Fax: 310-407-9090;

g.  co-counsel for Ableco, Pachulski, Stang, Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801, Attn: Bruce Grohsgal, Fax: 302-652-4400;

h.  the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Jane Leamy, Fax: 302-573-6497; and

i.  counsel for Lee, Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, NY 10004, Attn: Jennifer Rodburg, Fax: 212-859-4000.

20.  Notice of (a) the Motion, (b) the Bid Procedures, (c) the Auction, (d) the Objection Deadlines, (e) the Sale Hearing, and (f) the proposed assumption and assignment of the Purchased Contracts to the Stalking Horse Bidder or to the Winning Bidder shall be good and sufficient, and no other or further notice shall be required, if given as follows:

a.  <u>Notice of Sale, Auction and Sale Hearing</u>: Within three (3) business days after entry of this Order, the Debtors (or their agents) shall:

i.  provide notice, in substantially the form attached hereto as <u>Exhibit B</u> (the "<u>Sale Notice</u>"), of this Order, the Motion, the Auction, the Objection Deadlines, and the Sale Hearing by first-class mail upon (a) all Persons known by the Debtors to have expressed an interest to the Debtors in a transaction with respect to the Purchased Assets or a portion thereof during the past six (6) months; (b) all entities known by the Debtors to have asserted any Lien or interest in the Purchased Assets; (c) all non-debtor parties to the Purchased Contracts; (d) the U.S. Trustee; (e) the Committee and its counsel; (f) any Governmental Body known to have a claim in the Bankruptcy Cases; (g) all other known creditors and equity security holders of the Debtors; (h) all Persons that have requested special notice in the Bankruptcy Cases; and (i) all other Persons as directed by the Court;

ii. cause the Sale Notice to be published on http://www.kccllc.net/debshops (the "Website") as soon as practicable after entry of this Order; and

iii. cause the Sale Notice to be published on one occasion each in *The Wall Street Journal* and *The New York Times*, national editions, on or before August 12, 2011.

b. Assumption, Assignment and Cure Notice.

i. At least twenty-eight (28) days prior to the Sale Hearing (i.e. on or before August 16, 2011), the Debtors shall file with the Court and serve via first class mail on each counterparty to a Purchased Contract a notice of assumption, assignment and cure substantially in the form attached hereto as Exhibit C (the "Notice of Assumption and Assignment"). The Notice of Assumption and Assignment shall include (a) a statement that such contracts have been listed as Purchased Contracts on Schedule 1.1(c) to the Asset Purchase Agreement, (b) the Debtors' calculation of the amount necessary to cure all monetary defaults (the "Cure Amount") for each such Purchased Contract, and (c) evidence of the Stalking Horse Bidder's ability to provide adequate assurance of performance of such executory contracts or unexpired leases. A list of the Purchased Contracts, including Cure Amounts with respect thereto, will be posted on the Website and updated as modified. The Debtors reserve the right to supplement the list of Purchased Contracts and provide additional Notices of Assumption and Assignment up to three (3) business days prior to the closing of the Asset Purchase Agreement (or Modified Agreement), and to remove a contract from the list of Purchased Contracts at any time up to three (3) business days prior to the closing of the Asset Purchase Agreement (or Modified Agreement). Each Notice of Assumption and Assignment that identifies a contract or lease that was not previously designated to be assumed and assigned or that reduces the Debtors' calculation of the Cure Amount shall provide a deadline of not less than seven (7) days from the date of service of such Notice of Assumption and Assignment by which the counterparty to any such added Purchased Contract may object to (a) its listing as a Purchased Contract on Schedule 1.1(c) if the applicable contract was not previously designated to be assumed and assigned; (b) the Debtors' calculation of the Cure Amount for such Purchased Contract; and (c) adequate assurance of performance if such Purchased Contract was not previously designated to be assumed and assigned to the Stalking Horse Bidder.

ii. Any counterparty to a Purchased Contract shall file and serve on the Objection Recipients any objections to (a) the proposed assumption and assignment to the Winning Bidder (and must state in its objection, with specificity, the legal and factual basis of its objection) and (b) if applicable, the proposed Cure Amount (and must state in its objection, with specificity, what Cure Amount is required with appropriate documentation in support thereof), **no later than August 26, 2011 at 4:00 p.m. (Eastern Daylight Time)**; provided, however, that to the extent the Winning Bidder is an entity other than the Stalking

13

Horse Bidder, any supplemental or further objections to the sale to the Winning Bidder by a counterparty to a Purchased Contract based solely on the ability of the Winning Bidder(s) and/or Backup Bidder(s) to perform under any such Purchased Contract shall be filed by no later than September 7, 2011 at 4:00 p.m. (Eastern Daylight Time). If no objection is timely filed and served, (x) the counterparty to a Purchased Contract shall be deemed to have consented to the assumption and assignment of the Purchased Contract to the Winning Bidder(s) and shall be forever barred from asserting any objection with regard to such assumption and assignment, and (y) the Cure Amount set forth in the Notice of Assumption and Assignment shall be controlling, notwithstanding anything to the contrary in any Purchased Contract, or any other document, and the counterparty to the Purchased Contract shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Purchased Contract against the Debtors or the Winning Bidder(s), or the property of any of them.

       iii.    If the Winning Bidder or the Back-Up Bidder at the Auction is not the Stalking Horse Bidder then within one (1) day after the Auction, the Debtors shall file and serve a subsequent Notice of Assumption and Assignment (which notice will include information regarding the Winning Bidder's and Back-Up Bidder's (if applicable) adequate assurance) to each affected non-debtor party to a Purchased Contract identifying the Winning Bidder and Back-Up Bidder (if applicable) and publish same on the Website so as to provide adequate notice to such affected non-debtor party. A list of all Purchased Contracts assumed and assigned to the Winning Bidder shall be filed no later than five (5) business days following the closing of the Asset Purchase Agreement (or Modified Agreement).

21.    Notwithstanding any applicability of Bankruptcy Rules 6004(h), 7062, or 9014, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

22.    This Court shall retain jurisdiction to enforce and interpret the provisions of this Order.

Dated: July 21, 2011
Wilmington, Delaware

THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE