IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
: 
In re : Chapter 11
:
DSI HOLDINGS, INC., et al.,[1] : Case No. 11-11941 (KJC)
:
Debtors. : (Jointly Administered)
:
: Re: Docket Nos. 19 and 164
:
: Hearing Date: September 13, 2011 at 2:00 p.m.
---------------------------------------------------------------x

**ORDER: (1) APPROVING ASSET PURCHASE AGREEMENT AMONG
THE DEBTORS AND THE BUYER, (2) APPROVING SALE OF SUBSTANTIALLY
ALL ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES
AND OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 105,
363(b), (f) AND (m), (3) APPROVING ASSUMPTION, ASSIGNMENT AND SALE
OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES FREE
AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS
PURSUANT TO BANKRUPTCY CODE SECTIONS 363 AND 365, (4) DETERMINING
THE AMOUNTS NECESSARY TO CURE SUCH EXECUTORY CONTRACTS
AND UNEXPIRED LEASES, AND GRANTING RELATED RELIEF**

Upon the motion, dated June 26, 2011 (the "Sale Motion") of DSI Holdings, Inc. and its affiliates, debtors and debtors in possession in the above-captioned cases (the "Debtors") pursuant to sections 105, 363 and 365 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") seeking, among other things, entry of an order: (a) approving the sale of substantially all

---

[1] The last four digits of DSI Holdings, Inc.'s federal tax identification number are 9441. The mailing address for DSI Holdings, Inc. is 9401 Blue Grass Road, Philadelphia, PA 19114. Due to the large number of Debtors in these cases, which are being jointly administered for procedural purposes, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses is not provided herein. A complete list of such information may be obtained on the website of the Debtors' noticing and claims agent at http://www.kccllc.net/debshops.

of Debtors' assets pursuant to that certain Asset Purchase Agreement, dated as of June 24, 2011 (as amended, supplemented or otherwise modified from time to time after the filing of the Sale Motion, including all Exhibits, Schedules and Appendices thereto, the "Asset Purchase Agreement")[2] by and among the Debtors and the designee(s) of Ableco Finance LLC under the Asset Purchase Agreement (the "Buyer") free and clear of all Liens, claims, interests and encumbrances not specifically assumed by the Buyer in accordance with the terms and conditions contained in the Asset Purchase Agreement, (b) providing for the sale by the Debtors to the Buyer of the Purchased Assets, including the assumption, assignment and sale to the Buyer of the Purchased Contracts, free and clear of all Liens, claims, interests and encumbrances in accordance with the terms and conditions contained in the Asset Purchase Agreement, and (c) authorizing the consummation of the transactions (collectively, the "Sale Transaction") contemplated by the Asset Purchase Agreement ; and this Court having entered an order on July 21, 2011 [Docket No. 164] (the "Bid Procedures Order") approving, among other things, the bidding procedures with respect to, and notice of, the Sale Transaction; and an Auction having been set for August 31, 2011 in accordance with the Bid Procedures Order; and no Qualified Bidders (as that term is defined in the Bid Procedures Order) having submitted competing bids for the Debtors' assets; and the Debtors, after consultation with the Official Committee of Unsecured Creditors' Committee (the "Committee"), having determined that the Asset Purchase Agreement represents the highest or otherwise best bid for the Purchased Assets; and a hearing having been held on September 13, 2011 (the "Sale Hearing") to consider approval of the Asset Purchase Agreement; and adequate and sufficient notice of the Sale Motion having been given to

---

[2] A true and correct copy of the Asset Purchase Agreement (without Schedules) is attached hereto as Exhibit A. Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Asset Purchase Agreement.

all parties in interest in these cases; and all such parties having been afforded due process and an opportunity to be heard with respect to the Sale Motion and all relief requested therein; and the Court having reviewed and considered: (a) the Sale Motion; (b) the objections to the Sale Motion, if any; and (c) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and the Sale Hearing having been held, and after due deliberation and sufficient cause appearing;

**IT HEREBY IS FOUND AND DETERMINED THAT**:

A. This Court has jurisdiction over the Sale Motion under 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (N). Venue of these cases and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B. The statutory basis for the relief sought in the Sale Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and Local Rule 6004-1.

C. As evidenced by the affidavits of service on file with the Court, (i) due, proper, timely, adequate, and sufficient notice and a reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Bid Procedures Order and the Asset Purchase Agreement; (ii) such notice was good, sufficient, and appropriate under the circumstances; and (iii) no other or further notice of the Sale Motion is or shall be required.

D. The bidding and related procedures established by the Bid Procedures Order have been complied with in all material respects by the Debtors and the Buyer. The Debtors, in consultation with the Committee, have determined that the Asset Purchase Agreement represents the highest or otherwise best bid for the Purchased Assets.

3

RLF1 5343229v.1

E.  Upon entry of this Sale Order, the Debtors shall have full authority to consummate the Asset Purchase Agreement and transactions contemplated by the Asset Purchase Agreement.

F.  Approval of the Asset Purchase Agreement and consummation of the Sale Transaction is in the best interests of the Debtors, the estates, creditors, and other parties in interest. The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the sale to the Buyer pursuant to section 363(b) of the Bankruptcy Code.

G.  The Asset Purchase Agreement was negotiated, proposed, and entered into by the Debtors and the Buyer without collusion, in good faith, and from arm's length bargaining positions. The Buyer is not an "insider" of the Debtors, as that term is defined in section 101 of the Bankruptcy Code. The Debtors and the Buyer have not engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code.

H.  The Releases contained in Exhibit C to the Asset Purchase Agreement were negotiated, proposed, and entered into by the parties to such Releases without collusion, in good faith and from arm's length bargaining positions.

I.  The Buyer is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. The Buyer is acting in good faith within the meaning of section 363(m) in consummating the Sale Transaction.

J.  The consideration to be provided by the Buyer pursuant to the Asset Purchase Agreement: (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Purchased Assets; (iii) will provide a greater recovery for the Debtors' creditors than would be provided by

any other practically available alternative; and (iv) constitutes reasonably equivalent value and fair consideration.

K. The transfer of the Purchased Assets to the Buyer will be a legal, valid, and effective transfer of the Purchased Assets and, except as provided in the Asset Purchase Agreement, will vest the Buyer with all right, title, and interest of the Debtors to the Purchased Assets free and clear of all Liens, claims, encumbrances, interests, and other interests of any kind and every kind whatsoever (including Liens, claims, encumbrances and interests of any Governmental Body) other than those Liens, claims, encumbrances and interests specifically assumed by the Buyer pursuant to the Asset Purchase Agreement; provided, that all such Liens, claims, encumbrances and interests shall attach to the proceeds of the sale, in order of priority.

L. Subject to the provisions of this Sale Order and except as may be specifically provided in the Asset Purchase Agreement, the Debtors may sell the Purchased Assets free and clear of all Liens, claims, encumbrances and interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f)(1) through (5) of the Bankruptcy Code have been satisfied.

M. For purposes of section 363(b)(1) of the Bankruptcy Code, the Debtors have, in connection with offering a product or service, previously disclosed to one or more individuals a policy prohibiting the transfer of "personally identifiable information" (as defined in 11 U.S.C. § 101(41A)) about individuals to persons that are not affiliated with the Debtors, but the Sale Transaction is consistent with that policy because the policy, as in effect on the Petition Date, specifically permits the transfer of such "personally identifiable information" to the Buyer because the Buyer has agreed to be bound by the same or substantially similar privacy protections as those established by the Debtors' privacy policy.

N.   The transfer of the Purchased Assets to the Buyer, including the assumption by the Debtors and assignment and sale to the Buyer of the Purchased Contracts, will not subject the Buyer to any liability whatsoever (including any successor liability) with respect to the operation of the Business prior to the Closing or by reason of such transfer, except that the Buyer shall remain liable for the Assumed Liabilities and any other liabilities that the Buyer has specifically agreed to assume pursuant to the express terms of the Asset Purchase Agreement.

O.   The Asset Purchase Agreement is a valid and binding contract between the Debtors and the Buyer, which is and shall be enforceable according to its terms.

P.   Notice of the Debtors' assumption, and assignment and sale to the Buyer, of the Purchased Contracts has been provided to each non-debtor party to a Purchased Contract, together with a statement therein from the Debtors with respect to the amount, if any, to be paid to such non-debtor party to cure any defaults under, and to otherwise comply with the requirements of section 365(b) of the Bankruptcy Code with respect to the Purchased Contract to which such non-debtor is a party. As to each Purchased Contract, payment of the cure amounts (as set forth on Exhibit B hereto, by further order of the Court, or by agreement with the applicable contract counterparty (the "Cure Amounts")) is sufficient for the Debtors to comply fully with the requirements of 365(b)(1)(A) and (B) of the Bankruptcy Code. In addition, the Buyer has provided adequate assurance of its ability to perform its obligations under each of the Purchased Contracts within the meaning of section 365(f) of the Bankruptcy Code. Therefore, the Purchased Contracts may be assumed by the Debtors and assigned and sold to the Buyer.

Q.   There is other good and sufficient cause to grant the relief requested in the Sale Motion and approve the Asset Purchase Agreement and the Sale Transaction.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Sale Motion is GRANTED.

2. Any objections to the Sale Motion or the entry of this Sale Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are DENIED and OVERRULED.

3. The Asset Purchase Agreement, including all of its terms and conditions, and the Sale Transaction are hereby approved.

4. Pursuant to sections 363 and 365 of the Bankruptcy Code, the Debtors are authorized to (i) execute, deliver, and perform under, consummate, and implement the Asset Purchase Agreement together with all additional instruments and documents that are requested by the Buyer and may be reasonably necessary or desirable to implement the Asset Purchase Agreement, and (ii) take any and all actions as they deem necessary, appropriate, or advisable for the purpose of assigning, transferring, granting, conveying, and conferring to the Buyer or reducing to possession, the Purchased Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Asset Purchase Agreement, including, without limitation, any and all actions reasonably requested by the Buyer which are consistent with the Asset Purchase Agreement.

5. Pursuant to sections 105(a), 363(f) and 365(b) of the Bankruptcy Code, upon the Closing: (i) the transfer of the Purchased Assets to the Buyer pursuant to the Asset Purchase Agreement shall constitute a legal, valid, and effective transfer of the Purchased Assets and shall vest the Buyer with all right, title, and interest in and to the Purchased Assets; (ii) the Purchased Assets shall be transferred to the Buyer free and clear of all Liens, encumbrances and interests, and other interests of any kind and every kind whatsoever (including Liens, claims, encumbrances and interests of any Governmental Body) other than those Liens, claims,

RLF1 5343229v. 1

encumbrances and interests specifically assumed by the Buyer pursuant to the Asset Purchase Agreement, in accordance with section 363(f) of the Bankruptcy Code, with any such Liens, claims, encumbrances and interests to attach to the proceeds of the Sale Transaction, in the order of their priority, with the same validity, force, and effect which they had against the Purchased Assets prior to the entry of this Sale Order, subject to any rights, claims, and defenses the Debtors and all interested parties may possess with respect thereto; and (iii) each of the Purchased Contracts shall be deemed assumed by the Debtors and assigned and sold to the Buyer as of the Closing of the Sale Transaction.

6. This Sale Order is and shall be effective as a determination that all Liens, claims, encumbrances and interests shall be and are, without further action by any person or entity, released with respect to the Purchased Assets as of the Closing Date, except as may otherwise be set forth in the Asset Purchase Agreement.

7. The Buyer shall not be deemed or considered a successor to the Debtors or the Debtors' estates by reason of any theory of law or equity and the Buyer has not assumed nor is it in any way responsible for any liability or obligation of the Debtors or the Debtors' estates, except as otherwise expressly provided in the Asset Purchase Agreement or this Sale Order.

8. On the Closing Date, all of the Debtors' and the estates' rights, claims and causes of action against Critical Trade Vendors shall be assigned, sold and transferred to the Buyer.

9. Pursuant to section 365 of the Bankruptcy Code, the Debtors are authorized to assume the Purchased Contracts designated in the Asset Purchase Agreement, cure the same (pursuant to the Cure Amounts set forth on <u>Exhibit B</u> hereto, by further order of the Court, or by agreement with the applicable contract counterparty) as set forth in the Asset Purchase Agreement, and assign and sell the Purchased Contracts to the Buyer. The Buyer shall pay the

undisputed portion of the Cure Amounts no later than five (5) Business Days following the Closing of the Sale Transaction.

10. The Purchased Contracts, consistent with the provisions contained herein, shall be transferred to, and remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms, notwithstanding any provision in any such Purchased Contract (including those of the type described in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, following payment of the Cure Amounts, the Debtors shall be relieved from any further liability with respect to the Purchased Contracts after such assignment and sale to the Buyer.

11. All defaults or other obligations of the Debtors under the Purchased Contracts arising or accruing prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured, upon payment of the Cure Amounts, and the Buyer shall have no liability or obligation arising or accruing under the Purchased Contracts on or prior to the Closing, except as otherwise expressly provided in the Asset Purchase Agreement. The non-debtor parties to the Purchased Contracts are barred from asserting against the Debtors, the Buyer, and their respective successors and assigns, any default or unpaid obligation allegedly arising or occurring before the Closing, any pecuniary loss resulting from such default, or any other obligation under the Purchased Contracts arising or incurred prior to the Closing, other than the Cure Amounts; provided, however, that notwithstanding anything to the contrary in this Order, the Buyer shall assume both the benefits and the burdens which have accrued under the Purchased Contracts as of the Closing Date but are not yet billed or due, including, but not limited to: (i) any adjustments or reconciliations (including any year-end adjustments or reconciliations) in respect of common

9

RLF1 5343229v. 1

area maintenance, insurance, taxes, and other charges and expenses that are to be paid by the tenant under the terms of the non-residential real property leases that constitute Purchased Contracts, (ii) any unbilled percentage rent (if applicable) due and owing under the non-residential real property leases that constitute Purchased Contracts for the year in which the Closing occurs, and (iii) any indemnification obligations provided for under the terms of the non-residential leases of real property that constitute Purchased Contracts.

12. Notwithstanding anything herein to the contrary, the Debtors shall remain liable for any post-petition amounts due and owing under a Purchased Contract from and after the date of entry of this Sale Order through the Closing of the Sale Transaction, and any unpaid post-petition amounts due and owing under a Purchased Contract for the period from and after the date of entry of this Sale Order through the Closing of the Sale Transaction shall be paid to the applicable contract counterparty, in addition to the Cure Amounts (assuming that such post-petition amounts are not otherwise already included in the Cure Amounts), in connection with the assumption and assignment of such Purchased Contract, with such post-petition amounts to be paid on the timeframes and in the manner set forth in the Purchased Contract; provided that any dispute regarding such post-petition amounts shall be determined by the Bankruptcy Court, and the Debtors or the Buyer, as the case may be, shall pay any such disputed amounts as ordered by the Bankruptcy Court.

13. Section 2.6(c) of the Asset Purchase Agreement is hereby deleted in its entirety.

14. The consideration (including the Purchase Price and Assumed Liabilities) provided by the Buyer for the Purchased Assets under the Asset Purchase Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

RLF1 5343229v. 1

15. The Asset Purchase Agreement and the Sale Transaction are undertaken by the Buyer in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Asset Purchase Agreement and the Sale Transaction shall not affect the validity of the sale of the Purchased Assets to the Buyer, unless this Sale Order is duly stayed pending such appeal. The Buyer is a good faith Buyer of the Purchased Assets and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.

16. The Releases contained in Exhibit C to the Asset Purchase Agreement were negotiated, proposed, and entered into by the parties to such Releases without collusion, in good faith and from arm's length bargaining positions, and such Releases are hereby approved.

17. The Closing Date shall constitute the Final Maturity Date (as such term is defined in the DIP Financing) under the DIP Financing and the DIP Order.

18. All persons and entities that are in possession of some or all of the Purchased Assets as of the Closing are hereby directed to surrender possession of such Purchased Assets to the Buyer as of the Closing.

19. This Sale Order is and shall be binding upon and shall govern acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of fees, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities, who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect that the Buyer is the assignee and owner of the Purchased Assets free and clear of all Liens, claims, encumbrances and interests (all such entities being referred to as "<u>Recording</u>

Officers"). All Recording Officers are authorized and specifically directed to strike recorded claims, liens and interests against the Purchased Assets recorded prior to the date of this Sale Order unless the Asset Purchase Agreement expressly provides that the Buyer is acquiring the Purchased Assets subject to such claims, liens and interests.

20. No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions authorized herein, including the Asset Purchase Agreement and the Sale Transaction.

21. The terms and provisions of the Asset Purchase Agreement, the ancillary agreements, and this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, the Buyer, and their respective affiliates, successors and assigns, and any affected third parties, notwithstanding the dismissal of any of the Debtors' cases or any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code or conversion of the Debtors' cases to cases under chapter 7, as to which trustee(s) such terms and provisions likewise shall be binding and not subject to rejection or avoidance. The Asset Purchase Agreement, the Sale Transaction and this Sale Order shall be binding upon, and shall not be subject to rejection or avoidance by, any chapter 7 or chapter 11 trustee appointed in the Bankruptcy Cases. Further, nothing contained in any plan of reorganization (or liquidation) confirmed in these chapter 11 cases or any order confirming any plan of reorganization (or liquidation) or any other order entered in these cases shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Sale Order.

22. The Asset Purchase Agreement and any related agreements, documents, or other instruments may be amended by the parties in a writing signed by such parties without further order of the Court, provided that: (i) any such amendment does not have a material adverse effect

on the Debtors or the Debtors' estates and (ii) notice of any such amendment shall be provided to the Committee.

23. The failure to include specifically any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety.

24. To the extent of any inconsistency between the provisions of this Sale Order, the Asset Purchase Agreement, and any documents executed in connection therewith, the provisions contained in the Sale Order, the Asset Purchase Agreement and any documents executed in connection therewith shall govern, in that order.

25. To the extent permitted by the Asset Purchase Agreement, the Debtors shall file updated Schedules to the Asset Purchase Agreement (as such Schedules may be approved by the Buyer) as soon as practicable, but in no event later than five (5) Business Days following the Closing Date.

26. The provisions of this Sale Order authorizing the sale and assignment of the Purchased Assets free and clear of all Liens, claims, encumbrances and interests shall be self-executing, and notwithstanding the failure of the Debtors, the Buyer, or any other party to execute, file or obtain releases, termination statements, assignments, consents or other instruments to effectuate, consummate and/or implement the provisions hereof, all Liens, claims, encumbrances, and other interests (other than those expressly assumed by the Buyer or permitted to survive under the Asset Purchase Agreement) on or against such Purchased Assets, if any, shall be deemed released, discharged and terminated.

27. The secured claims of: (i) Bexar County, Texas, (ii) Harris County, Texas, (iii) the City of Pearland, Texas, and (iv) Tarrant County, Texas (collectively, the "Texas Taxing Authorities") for 2011 taxes (in an amount not to exceed $11,100) shall be deemed to be a Permitted Exception under the Asset Purchase Agreement and, upon the Closing of the Sale Transaction, shall become an obligation of the Buyer; provided that nothing herein shall be a determination of the amount of the claims of the Texas Taxing Authorities, and the claims and liens of the Texas Tax Authorities shall remain subject to any objections any party would otherwise be entitled to raise as to the priority, validity or extent of such liens.

28. The Buyer shall pay the claim asserted by Multnomah County, Oregon in the amount of $953.45 and unpaid portion of the claim asserted by Frenchtown Charter Township, Monroe County, Michigan in the amount of $200.29 no later than 30 days following the Closing of the Sale Transaction.

29. Notwithstanding the provisions of Bankruptcy Rule 6004(h) and 6006(d), this Sale Order shall be effective and enforceable immediately and shall not be stayed.

30. This Court shall retain exclusive jurisdiction to resolve any controversy or claim arising out of or related to this Sale Order, the Asset Purchase Agreement or any related agreements, including without limitation: (a) any actual or alleged breach or violation of this Sale Order, the Asset Purchase Agreement or any related agreements and (b) the enforcement of any relief granted in this Sale Order or otherwise, as set forth in the Asset Purchase Agreement.

Dated: September 13, 2011
      Wilmington, Delaware

_____
THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

14

RLF1 5343229v. 1

# **Exhibit A**

Asset Purchase Agreement (without Schedules)